Anderson, J.,
delivered the opinion of the court.
This is a prosecution in fact for obtaining money on false pretences, which is made larceny by the statute; and the indictment is for larceny.
It is a reasonable proposition, that upon this indictment it is necessary for the commonwealth to prove every fact which would be required to be alleged in an indictment for obtaining money on false pretences. And in such indictment it would be a material allegation that the money was obtained by the false pretence alleged, and therefore was necessary to be proved in this indictment in oi;der to a conviction. The false pretence must be the instrument of the cheat. Bishop on Criminal Law, § 487. The pretence need not have been the only inducement. If, operating either alone or with other causes, it had a controlling influence, so that but for it the person to whom it was addressed *917 would not have yielded, it is sufficient.. In a note to the above section the author says: In Commonwealth v. Drew, 19 Pick. R. 179, Morton, J., stated the true doctrine thus: “that the false pretences, either with or without the cooperation of other causes, had a decisive influence upon the mind of the owner, so that without their' weight he would not have parted with his property.” In People v. Haynes, 11 Wend. R. 557, 14 Wend. 546, Chancellor Walworth employed much the same language, saying: “It is not necessary to constitute the offence of obtaining goods by false pretences, that the owner should have been induced to part with his property solely and entirely by pretences which were false; but if the jury are satisfied that the pretences proved to have been false and fraudulent were a part of the moving causes which induced the owner to part with his property, and that the defendant would not have obtained the goods if the false pretences had not been superadded to statements which •may have been true, or to other circumstances having a partial influence upon the mind of the owner, they will be justified in finding the defendant guilty of the offence charged, within the letter as well as the spirit of the statute on the subject.” Other inducements may have combined with the false pretences to induce the owner to part with his property; but it must appear that but for the false pretences the owner would not have parted with his property—that they had the controlling, prevailing influence. Anable’s ease, 24 Gratt. 563, 567.
The only proof of any false pretence in this case, or •that the prisoner made any statement that was not strictly true is, that he said he was the owner of the lots. It appears from the certificate of facts that, in ¡the spring of 1873, the prisoner had an interview with *918 George E. Bowden, the owner of two lots of land, in 0 7 7 which Bowden expressed his willingness to sell the-two lots together for $800, but declared that he would ggj| tkem separately; and that afterwards, in the latter part of January 1874, the prisoner sold one of them to Uelson Randolph, a colored man, for $200„ telling him he owned them; that Randolph paid him fifty dollars in cash, and agreed to pay the balance in monthly instalments of fifteen dollars each. It is contended for the commonwealth, that “telling him that he was the owner of the lot” was a false pretence. But it is not proved that he, Randolph, was influenced1 by that declaration to make the purchase, and that he-would not have purchased and made the cash payments but for that declaration of the prisoner, nor can it be inferred. It is rather to be presumed that Randolph desiring to have the lot would have accepted the-offer of the prisoner if he had said nothing to him' about the ownership, as he made no inquiry of him about it, so far as this record shows. It does not appear that the declaration made by the prisoner was made in response to an inquiry made by Randolph, but-seems to have been incidentally mentioned by the pri- * soner. This defect in the proof, if it had been in the allegations of an indictment for obtaining money-on false pretences, would have been fatal on demurrer, and it would seem ought to avail the prisoner as effectually in this proceeding. The court is of opinion, therefore, that upon this ground the verdict was contrary to the law and the evidence, and ought to have-been set aside.
The court is further of opinion, that unless the selling was by false pretence, with intent to defraud the buyer, the ease is not within the statute. It follows that the-fraudulent intent must have existed at the time the- *919 false pretences were made, by which the money was obtained. If there was an intention by the prisoner to defraud Randolph, he could not have intended, when he sold him the lot, and received fifty dollars in part of the price, ever to pass to him title for the same. But the facts as certified by the court show the contrary. It is a fair inference from them that he bad previously been in treaty with Bowden for the purchase of the lots, and ascertained that he could purchase them together for three hundred dollars, and was well satisfied that all that was necessary for him to do was to accept Bowden’s offer, and the lots were his; and finding that he could sell each lot for two hundred dollars, and make a handsome speculation, he determined to take them at Bowden’s offer, and considered them as virtually his. It is evident that he had no purpose to cheat Randolph by inveigling him to pay him his money for property which he had no right to sell him, and for which he could not and did not intend to make him a title. This is shown by the fact, that a few days after the sale to Randolph he went to Bowden and completed the contract of purchase with him, paying Mm in cash fifty dollars, the money or the amount he had received from Randolph, and executing his notes for the deferred payments, and entering into articles of agreement with him, setting out the terms of the sale and purchase, informing him that he had sold each of the lots for two hundred dollars, at an advance of one hundred dollars on the price he was to pay him for them, and requesting him, when the purchase money was paid, to convey the lots respectively to his vendees. By this conduct he showed a bona fide intention that Randolph should get what he sold him, and for which he had received the cash payment, and conclusively repels the idea of an intent to cheat or defraud him in *920 ga]e> jf jn his subsequent dealings with him there x 0 was evidence to show that he had changed his purpose, and sought to cheat and defraud him, which we think 6 there is not, it could not make the previous act fraudulent and criminal, which was bona fide and lawful. The payments which he afterwards received from Randolph, though in small sums, he ought to have turned over to Bowden until he had secured title to Randolph, and to have run no risk of not being able to make the payments to Bowden when they fell due. But it would be a-harsh judgment to say that his not doing so evidenced an intention to cheat and defraud Randolph. It is more probable, and it is more just to conclude, that he calculated upon being able, and bona fide intended to make the payments to Bowden when they fell due from other sources, in which he was disappointed by misfortunes, which reduced him to bankruptcy; and that his failure to fulfill his contract; and to secure Randolph’s title was, though censurable, rather his misfortune than a crime. But he had reduced the amount due on Randolph’s lot to eighty-seven dollars, which Randolph paid to Bowden, and received his deed with the approval of the prisoner, who though discharged from his legal liability by the act of bankruptcy, revived it by his promise to refund the amount to Randolph. The court is clearly of opinion that the evidence is wholly insufficient to establish the fraudulent intent, which conclusion is strengthened by the fact that the prisoner has resided in this city for twenty years in good repute.
The indictment charges the larceny of divers notes of the United States currency, for the payment of divers sums of money, in the whole amounting to the sum of $208, the property and notes of Nelson Randolph. The evidence does not show that the prisoner *921 received from Randolph notes in United States currency. The proof is, that he received fifty dollars in cash, and that Randolph agreed to pay the balance in monthly installments of $15 each. Upon the authority of the case of Johnson v. Commonwealth, 24 Gratt. 555, the court is of opinion that in the absence of proof that such money as was charged by the indictment to have been stolen was received by the prisoner, the jury was not warranted in finding a verdict against him. Upon the foregoing grounds the court is of opinion to reverse the judgment and to remand the cause.
Judgment reversed.