Staples, J.
The accused was convicted in the hust^n»s court of the city of Richmond of obtaining, by pretenses, certain goods from the mercantile firm of M. Millhiser & Co« During the trial numerous exceptions were taken to the rulings of the court, which are now to be considered. It was proved that the accused, at the time of the commission of the alleged offence, was a resident of Greensboro, North Carolina, and a member of a firm consisting of himself, I. “W. Allred and Cicero L. Trogdon, doing business under the style of Trogdon & Co.; that on or about the 28th of February, 1878, the accused came to the city of Richmond and represented to Millhiser & Co. that the concern of which he was a member had, when they commenced business a year before, a cash capital of $2,700, a stock of goods then on hand worth $4,000, according to an inventory taken just before he left home; that the debts of the concern amounted to about $400, none of which were due; and that I. ~W. Allred, one of the partners, owned real estate in Randolph county, North Carolina, of the value of $3,000; and upon these statements he obtained from Millhiser & Co. the goods mentioned in the indictment. Having proved these facts, the Commonwealth introduced Charles A. Baldwin and A. Oppenheimer, also merchants of Richmond city, and proposed to show by them that the accused had, on the same day, made to each of them statements similar in all respects to that made to Millhiser & Co., with reference to the condition and circumstances of Trogdon & Co. and of I. "W. Allred individually ; the only difference being that in the case of A. Oppenheimer, the representations were made after the goods were purchased but before they were taken away. To the introduction of this evidence the accused, by his counsel, objected, upon the ground that it was illegal and irrelevant, and upon *869 the further ground that the accused was then under indietment for obtaining the goods of Gardner, Carlton & Baldwin, of which concern Charles A. Baldwin was member. '"'The court overruled the objection and admitted the evidence; to which the accused excepted; and this is the subject matter of the first and second hills of exception.
The Commonwealth next introduced Lewis H. Blair, of the firm of Lewis H. Blair & Co., who testified that having obtained from Charles A. Baldwin a copy of a statement in his possession, the same made by the accused, touching the condition of the concern of Trogdon & Co., he enclosed that statement in a letter addressed to Trogdon & Co., Greensboro, North Carolina, and asked if the same was correct, and in due course of mail, a day or two after, he received a letter dated 18th March, 1878, signed Trogdon & Co., in which it was said the statement was a true one, and the business of the firm still prospering. To the admission of this testimony, as also to the introduction of the letters in question, the accused objected; hut his objection was overruled; and he again excepted ; and this is his third bill of exceptions.
1 Before considering the main question presented by these bills of exception, it will • be well to dispose of a preliminary point arising upon the admission of the letter mentioned in the third bill of exceptions, signed Trogdon & Co., and addressed, to Lewis H. Blair & Co. 'It is insisted that this letter, for aught that appears, may have been written by some other member of the firm; that there is nothing to connect the accused with it; nothing to show that he wrote it,, or that he ever saw it. It is sufficient to say that the accused resided at Greensboro, North Carolina, and was the only member, of the concern that did reside there, and that he had the exclusive management and control of the business. These *870 facts justify the presumption that the accused is the of the letter. At all events, they were sufficient to warrant its admission to the jury in the absence of countervailing evidence.
^.-The real question arising upon the three bills of exception • is, whether evidence of other false pretenses is admissible upon this indictment. This question has been very ably argued by counsel on both sides, and is one of the very first impression in the state. It has created great difficulties in the minds of some of the judges. The subject has received a very careful consideration, and all the authorities referred to in the argument, with many others not referred to, have been fully examined. After the most deliberate reflection, I think the hustings court did not err in receiving the evidence; and I will now proceed to give the reasons for this opinion.
I do not dispute the value of the rule which confines the evidence to the matter in issue; more especially in criminal prosecutions involving the life or liberty of the accused. It is of the utmost importance to him that the-facts laid before the jury shall consist exclusively of the-transactions which form the subject of the indictment,, and which alone he can be expected to come prepared to answer. It is not just to him to require him to answer' for two offences when he is indicted for one, and thus to blacken his character and to create impressions on the mind of the jury unfavorable to his innocence. This is the doctrine of the courts in every well-regulated system of jurisprudence. And yet, when we come to examine the cases bearing upon the question, it is difficult to determine which is the more extensive, the doctrine or the acknowledged exceptions. .«For example, in prosecutions for uttering forged notes, for passing counterfeit money, and for receiving stolen goods, evidence is always admissible of other transactions of a like character, although they may amount to distinct felonies, provided they are *871 not too far removed. What are the limits as to time and circumstances, in such cases, it is for the court in its discretion to determine. PTor is it an objection, that offences thus proved are the subjects of separate indictments. Roscoe on Crim. Evidence, 86; 3 Russell on Crimes, 285. The object of this evidence is simply to show the guilty knowledge of the accused.
There is another class of cases in which it is held permissible to prove other offences for the purpose of showing the guilty intent of the accused. Thus upon an indictment for maliciously shooting at the prosecutor, it has been held proper to show that the accused had twice shot at the prosecutor the same day, for the purpose of rebutting the idea of accident, and of establishing the wilful intent. Reg. v. Voke, Russ. & Ry. 531. And so, upon a prosecution for administering sulphuric acid to horses, with intent to kill them, evidence is admissible that the prisoner had frequently mixed sulphuric acid with horses’ corn. Reg. v. Mogg, 4 Car. & Payne, 364. Upon an indictment for a libel, the publication of other libels not laid in the indictment may be given in evidence to show the quo animo the defendant made the publication in question. 1 Greenl. Evi. § 53. Indeed the cases upon this subject are almost innumerable, as may be seen upon examination of the books on criminal lawL 3 Russ. on Crimes, §§ 285, 287, 288; Roscoe on Criminal Evidence, 86, 94.
In Bottombey v. United States, 1 Story R. 135, Mr. Justice Story has very clearly stated the principle upon which this sort of evidence is received. He says: “ In all cases where the guilt of the party depends upon the intent, purpose or design with which an act is done, or upon his guilty knowledge, I understand it to be a general rule that collateral facts may be examined into in which he bore a part, for the purpose of establishing a guilty intent. „-In short, whenever the intent or guilty *872 knowledge of a .party is á material ingredient in the issue of a-dase, there collateral parts, that is, other acts and declarations .of a similar character tending to establish such intent or knowledge, are proper evidence. In many cases of fraud it would, be otherwise impossible satisfactorily to establish the true nature and character of the act.” The remarks of Bigelow, J., in Cook v. Moore, 11 Cush. R. 213, 216, are to the same effect.' ÜS’o-w, upon a prosecution for obtaining goods by false pretenses the indictment must aver the fraudulent intent, and the Commonwealth must pro veit. It is the very gist of the offence. Annable’s case, 24 Gratt. 563, 570. It is not sufficient that the accused knowingly states what is false. It must be shown his intent was to defraud. Such intent is not a presumption of law, but a matter of fact for the jury. Being a secret operation of the mind it can only be ascertained by the acts and representations of the party. A single act or representation in many cases would not be decisive, especially where the accused has sustained a previous-good character. But when it is shown that he made similar representations about the same time to other ' persons, and by means of such representations obtained goods, all of which were false, the presumption .is greatly strengthened that he intended to defraud,.
• ©nb pi the counsel for the accused, in a very able •argument' upon this branch of the case, insisted that when the accused obtains goods by falsely representing' himseif a man of property, the jury must infer the guilty intfent; and therefore evidence of collateral facts is unnecessary and irrelevant, and can only mislead the jury.
■ It may be conceded that when goods are obtained by false representations of the kind mentioned—and this is the lyholó case—the jury may justly infer the fraudulent intfent. But it frequently happens, in a large majority of cases, there are numerous facts and circumstances, some *873 times of a minute and varied character, throwing light upon the conduct and motives of the accused.' - It is impossible for the court to foresee what may be developed in the progress of the trial. When evidence is offered of other transactions to show the guilty intent of the accused, is the court to say the intent' is already conclusively proved, and the evidence is therefore irrelevant ? What would be thought of a judge who would thus prejudge, the case and invade the province of the jury? The learned counsel would hardly concede the fraudulent intent of his client upon any state of facts. In the case before us we have but a small portion of the evidence. It is, of course, impossible for us to say what testimony was adduced by the accused upon the question of his particular intent; and yet we are asked to say that the evidence set out in the three bills of exception is irrelevant, upon the assumption that without it the jury must have found the guilty intent on the part of the accuse'd. The opinion of this court in Walsh’s case, 16 Gratt. 541, has a strong bearing upon this question. There the distinction is plainly drawn .between guilty knowledge or intent as a presumption of law, and guilty knowledge or intent as a presumption of fact—a mere inference -to be drawn by the jury. In the latter case, whilst the jury may find the accused guilty upon a given"state of facts, they are not bound-to do so. The}7 are to weigh all the circumstances, and draw from them such conclusion as they may think warranted by the evidence. In this class of cases it has been held that even the admission ‘of the accused that the act was done with a fraudulent or malicious intent cannot preclude the Commonwealth from proving it by any proper evidence. . Commonwealth v. McCarthy, 119 Mass. R. 354; Priest v. Inhab. Groton, 103 Mass. R. 530.
But let us see what are the authorities on thh question. *874 In civil cases the decisions are abundant which hold that on question of intent to defraud by false pretenses other acts or representations of a like character done at or about the same time with that in issue are admissible with a view to the quo animo. The case of McKinney v. Dingley, 4 Greenl. R. 172, is an example. There the suit was to avoid a sale on the ground of the false and fraudulent conduct of the purchaser in representing himself to be a man of good property and credit when he was not; and it was held proper for the vendor to give evidence of similar false pretexts successfully used to other persons in the same town about the same time to show a general scheme to amass property by fraud. In Hennequin v. Naylor, 24 New York R. 139, for the purpose of proving the fraud the vendor relied in pai’t upon the fact that the defendant had purchased of several persons large bills of goods, the plaintiff, among the rest, just on the eve of suspension. See also Whittier v. Varney, 10 New Hamp. 291, 477; Menfey v. Brace, 23 Barb. R. 561; Allison v. Matthew, 3 John. R. 234; Olmsted v. Hotailing, 1 Hill 317; 1 Phillip’s Ev. 653, 773. These decisions are directly in point, and are entitled to great weight if the rules in criminal are the same as in civil cases. That they are so in general, so far as the means of ascertaining truth are concerned, is established by a great weight of authority. 1 Bishop’s Crim. Procedure, § 502; 1 Greenl. § 65; Roscoe Crim. Ev. p. 1, and the cases cited by these authors; Grayson's case, 6 Gratt. 712,
/tÁ.s, however, it may be said that the rule confining the evidence to the point in issue should be more rigidly applied in criminal than in civil cases, let us examine some of the decisions based upon criminal prosecutions. /TThe case of The Commonwealth v. Eastman, 1 Cush. R. 189, was an indictment for obtaining goods or money under false pretenses.. It was ably argued *875 and carefully considered. The court in commenting upon one branch of the case, say: “Evidence of other purchases of goods than those charged in the ment made by the defendants from other persons during the month of March, 1844, under similar cireumstances with the transaction charged in the indictment, was admitted for the purpose of showing the nature of the business of the defendants and the extent of the purchases made by them, and also as bearing upon the bom fide character of the dealings of the defendants with the particular individuals alleged to be defrauded.
“ This species of evidence would not be admissible for the purpose of showing that the defendant had also committed other like offences, but simply as an indication of the intention in making the purchases set out in the indictment. It is analogous to the proof of the scienter in indictments for passing counterfeit money, by showing that the defendant passed other counterfeit money to other persons about the same time. Such evidence is always open to the objection that it requires the defendant to explain other transactions than those charged in the indictment; but when offered for the limited purpose above stated, that of showing a criminal intent in the doing of the act charged, it has always been admissible.”
This decision was followed by the case of Commonwealth v. Tuckerman, 10 Gray’s R. 173—an indictment for embezzlement—and upon the trial evidence was admitted of other acts of embezzlement of different amounts and at different times, for the purpose of showing the fraudulent intent. The next case is that of Commonwealth v. Jeffries, 7 Allen’s R. 548, for obtaining goods by false pretenses. In both cases the decision in Eastman’s case was cited, commented upon and approved. And in all the cases the principle gov *876 erning in prosecutions for having counterfeit money applied to prosecutions for obtaining money by false pretenses.
/"The counsel for'the accused in this case have cited the case of State v. Lapage, 57 New Hamp. R. 245; and have read extracts from the opinion of Chief Justice Cushing. The learned judge discusses with great force and learning the rules governing the admission of collateral facts to show the intent of the accused. And although it is obvious he is not favorably inclined to the admission of such evidence, still he concedes there are cases in which it is admissible.^ After enumerating these cases, he proceeds as follows: “ In cases of indictment for obtaining goods under false pretenses it very often happens that the respondent has been in some kind of business of w’hich buying and selling goods on credit makes a part, and in such case the difficulty is to draw the line between the points where legitimate business ceases and' fraud begins. In such cases a single purchase of goods on credit might happen in the ordinaiy course of business: but if a party should make several purchases of goods at a time when he was in failing circumstances, that fact would have some tendency to show that he knew he was in failing circumstances, and that he did not intend to pay for them. Of course the effect of such testimony would depend upon the number and amount of such purchases, the after disposition of the goods purchased, and.all the other circumstances.” See also State v. Johnson, 33 New Hamp. R. 441; Horey v. Grant, 52 New Hamp. 569; Defrese v. State, 3 Heisk. R. 53; 42 Ala. R. 532.
The case of Wood v. United States, 16 Peter’s R. 342, is perhaps a more satisfactory authority than any cited,. There, upon an information against the defendant for failing to invoice certain goods imported by him, with design to evade the duties and to defraud the government, *877 it was decided that other invoices of articles imported, into New York and assigned to the defendant was proper evidence to show the fraudulent intent. Judge Story, in delivering the opinion of the court, said: “ The question was one of fraudulent intent or not, and upon questions of that sort, where the intent of the party is the matter in issue, it has always been deemed allowable as well in criminal as in civil cases to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate and establish his intention. Indeed, in no other way would it be practicable in many cases to establish such intent or motive; for the single act taken by itself may not be decisive either way, but when taken in connection with others of the like character and motive, the intent and motive may be demonstrated almost with absolute certainty.” These views the learned judge illustrates and enforces by argument, and by reference to authority.
The most recent case on this subject is that of Bielsehofshy v. The People of the State of New York, decided by the supreme court of New York, and reported in 3 Hun. R. 46. It was a prosecution for obtaining goods upon false pretenses. It was decided to be competent to prove other offences committed by the accused, with the view to show his intent in the particular offence charged, although it might incidentally prejudice the character of the accused in the mind of the jury. Hpon a writ of error to the court of appeals of New York this judgment was affirmed. So that we have the decision of the highest courts of New York upon the very points involved here. Against this array of authorities we have the case of Reg. v. Holt, Bell Crim. Cases 280, in which, upon an indictment for obtaining money upon false pretenses, it was held not permissible to show that the prisoner had obtained money by similar false pretenses within *878 a week afterwards, for the purpose of establishing the • .__. lntent- ,
the case was not argued, and no reasons are given in the opinion of the court, it is impossible to say upon what grounds the decision was placed—possibly the subsequent pretenses were considered as too remote in point of. time. The decision has not been approved by writers on criminal law. Roscoe Crim. Ev., 94. Opposed to this are the two cases of Reg. v. Roebuck, D. & B. p. 24, and Queen v. Frances, 2 Crim. Cases, Reserved Law R. 128, decided in 1872. This last case is in entire harmony with the American decisions already cited; so that the English doctine sustains fully the view taken by the courts in this country./
It has been said, that whatever may be the rule elsewhere, under our statute obtaining goods upon false pretenses is made larceny, and upon a prosecution for larceny it is not admissible to prove other larcenies, by way of showing the intent.
"Without stopping to controvert the conclusion reached by this position, it is sufficient to refer to Anable's case, 24 Gratt. 563, in which it was held that whilst the statute declares that the party obtaining goods by false pretenses is guilty of larceny, it is not intended to dispense with the proof requisite to show that the goods were obtained by false pretenses.' Every ingredient entering into the offence of obtaining goods by false pretenses must be shown as fully as if the statute had not been passed.
My opinion, therefore, is, that the hustings court did not err in admitting the evidence set out in the three bills of exception already adverted to, such evidence not being too remote in time or place to throw light upon the intent of the accused in the main transaction. I think, however, that the court ought to have'explained to the jury that this evidence was only *879 to be considered by them in connection with and as explanatory of such intent, and not as proof the accused had committed other offences not charged in the indictment.
Passing from this point, we come to the fourth bill of exceptions, which presents the question of the admissibility as evidence of the record in bankruptcy. And, first, it is objected there is no proof that the accused is the identical W. F. Trogdon who filed the petition and schedule in bankruptcy, and who was adjudicated a bankrupt by the district court of the United States for the western district of Forth Carolina. It is very true that no witness swears to the identity of the accused; but the evidence is, nevertheless, conclusive upon that point. When the accused came to Richmond in February, 1878, he represented that the concern of which he was-a member consisted of himself, I. W. Allred and Cicero Trogdon, and that it was doing business at Greensboro, Forth Carolina, under the style of Trogdon & Co. The petition in bankruptcy is signed by W. F. Trogdon, of Greensboro, and represents that he is a member of the firm of Trogdon & Co., consisting of himself, I. W. Allred and Cicero L. Trogdon. In the list of creditors filed among the proceedings in bankruptcy are the names of Millhiser & Co., A. Oppenheimer, and Gardner, Carlton & Baldwin, whose debts are stated to have been contracted on the 28th February, 1878. It is not within the bounds of probability that there were two mercantile firms in Greensboro, Forth Carolina, with the same style and name, with the same number of parties, and all bearing identically the same names, and that each of these firms should be debtor in the same amount to three mercantile firms in this city for goods purchased the same day. Upon this state of *880 facts there can he no clouht that the proof óf identity complete.
The next enquiry is, to what extent and for what purpose is the record in bankruptcy evidence in this case ?
Without entering into a discussion of the questions so laboriously argued by counsel as to the admissibility and effect of records in civil cases, upon the trial of criminal offences, I deem it sufficient to say that in my view this record is competent to show that the copartnership of Trogdon & Co., and the individuals constituting said co-partnership, were on the 20th of April, 1878, duly adjudicated bankrupts by the district court of the United States. Apart from the consideration that an adjudication in bankruptcy is in the nature of a decree in rem as respects the status of the debtor, it plainly appears that the whole proceeding in this case was had at the instance and upon the application of the accused. The record is also competent to show the petition and schedules filed by the accused, the statements therein contained, and any other act done or declaration made by the accused in the progress of the proceedings in bankruptcy. And this upon the plain principle that a record is always evidence against a party as containing a solemn admission, or judicial declaration, in regard to a particular fact or facts. In such case, however’, it is admitted not as a judgment conclusively establishing the matter, but as a deliberate declaration or admission that the fact was so. 1 Greenl. on Ev. § 527 a.
My opinion further is, that the several schedules filed by I. W. Allred and Cicero Trogdon, also constituting a part of the record in bankruptcy, are not legal evidence against the accused. They are simply the admissions in writing of those persons. The accused had no opportunity of controverting these statements, and no particular intent in doing so. And even though it appeared the ac *881 cused was afforded an opportunity of controverting the admissions of his copartners, it would be unjust that upon a criminal charge involving his liberty and character, he should be prejudiced by a mere default in protecting his interest in a civil proceeding. Starkie on Ev. 301. If, therefore, upon the trial in the hustings court an objection had been made to the introduction of this evidence, it would have been the duty of the hustings court to exclude it, or instruct the jury to disregard it. A difficulty, however, arises from the fact that the accused made no objection to any specific part of the record, but contented himself with a general objection to the whole. Several decisions of this court in civil cases have held that it is the duty of the objecting party to lay his finger upon the exceptionable parts of the record, so that the mind of the trying court might be brought to bear upon them instead of making a motion equivalent to the rejection of the whole record. Harriman v. Brown, 8 Leigh, 697; Friend v. Wilkinson & Hunt, 9 Gratt. 31; Parson’s v. Harper, 16 Gratt. 64. The same rule must necessarily prevail in criminal cases. The accused cannot by a general objection to the whole record impose upon the court the duty of examining every part of it to see whether perchance there may not be something in it not admissible as evidence. It is his duty to point out such portions of it as come within the scope of his objection. I think, therefore, the objection to the entire record in this case was too broad, and the hustings court committed no error in overruling it as made.
With respect to the fifth bill of exceptions, I think the hustings court did not err in admitting as evidence the written statement therein mentioned. This statement was the same made by the accused to Samuel Hirsh, a member of the firm of Millhiser & Co., on the 28th of February, 1878. It was forwarded on the 2d of March *882 to another member of the firm then in the city of New Toi’k. The latter, after receiving the statement, and after making certain enquiries in New York, telegraphed to his house, in Richmond, to ship the goods purchased ky aceuse(j -¿o jn Greensboro.. This statement must be treated as a representation made to the firm, and to every member of it. It constitutes material evidence to show the grounds upon which both partners acted, the one in selling and the other in directing the delivery of the goods to the accused.
In the further progress of the tidal the Commonwealth offered in evidence what purported to be a copy of a list of real and personal estate given in by I. W. Allred to the assessor of Randolph, North Carolina, and certified as correct by the register of deeds in that county. This paper was objected to by-the accused, but his objection was overruled; and this is the subject of the sixth bill of exceptions. It does not appear when the list was made out by Allred, or when it was returned by the assessor, or when the copy was certified by the register; for the assessment, the list and the certificate are all without date. The paper did not tend, therefore, in the slightest degree to show the falsity of the representations made by the accused on the 28th of February, 1878, with respect to the l’eal estate owned by Allred in Randolph county.
But this is not all. The paper purports to be a copy of a listón file in some office or other place of deposit in North Carolina. Such a copy would not be evidence in any court, unless the original is a matter of record, or unless there is a statute making the copy evidence. We know nothing of the functions and duties of the assessor or of the register of deeds in North Carolina. All these matters are regulated not by the principles of the common law, but by North Carolina statutes, of which the Virginia courts cannot take judicial notice. If the Commonwealth wished to rely upon a paper of this sort, it- *883 ought to have brought the North Carolina statutes here, and proved them as other facts; and it ought to have shown by these statutes that a copy of this sort is made legal evidence.
But to prevent all misapprehension on a future trial, I will say that, in my opinion, this paper, whether a copy or the original, is not legal evidence against the accused in this case for any purpose. It is nothing more than a statement of Allred’s, on oath it may be, made to some North Carolina officer, of the amount and value of his real and personal property. It was not made in the presence of the accused; it was a matter in which he had no interest or concern, and no opportunity was ever afforded him of cross-examining the person who made it. It is difficult to find even a plausible ground upon which such a paper or statement can be used upon a criminal trial.
The learned counsel representing the Commonwealth here seemed to think, however, that the evidence was very immaterial, and the accused could not have been prejudiced by it. How is it possible for us to say what effect it had on the mind of the jury? The whole purpose of introducing it was to show that the accused had made a false statement to Millhiser & Co. when he represented that his copartner Allred owned $3,000 worth of real estate in Randolph county. If the paper proved anything, it proved the falsity of that representation; and so the jury must have considered it. Besides, at the present term this court has held, as it has held on repeated occasions, that if the accused may have beenprejudicecL by the evidence, even though it be doubtful whether in fact he was so or not, it is sufficient for reversing the judgment.
My opinion, therefore, is, that the hustings court erred in admitting the evidence set out in the ninth bill of ex *884 ceptions. Payne v. Commonwealth, supra p. 855, and cases there cited, decided at the present term.
The next subject of enquiry is the seventh bill of ex-ceptions, from which it appears that the hustings court, jn response to an enquiry by the jury, instructed them they must be satisfied from the evidence that the alleged false pretenses were believed by Millhiser & Co.; that but for them they would not have parted with their goods—that is, that they had the prevailing and controlling influence in making Millhiser & Co. part with their property. To this instruction the accused excepted. Upon this point it is sufficient to say that the instruction is in accordance with the decision of this court in Fay’s case, 28 Gratt. 912; and with the current of authority elsewhere.
The questions arising upon the eighth bill of exceptions have been already considered and disposed of in connection with the first, second and third bills of exception. They do not, therefore, require any further notice at our hands.
The ninth bill of exceptions and the last, is to the refusal of the hustings court to set aside the verdict and grant the accused a new trial. According to the certificate of the judge of that court, the application for a new trial was based exclusively upon the ground that the facts relating to the belief of Millhiser & Co. in the statement of the accused were insufficient to show that this statement was the cause or the predominating cause of the delivery of the goods. In. other words, that Millhiser & Co. did not give entire credence to the representations of the accused, but proceeded to obtain elsewhere information upon the subject, and upon that information they relied in giving the credit. The true enquiry, as is conceded, is whether the false pretense, either operating alone or with other causes, had a controlling influence, or that *885 ■without such pretense the owner would not have parted with his goods. Upon this point the evidence is decisive. It was proved by both members of the cern of Millhiser & Co. they would not have shipped the goods but for the statements made by the accused. It may be that the information obtained in New York had some influence upon their minds; but this is perfectly consistent with the idea that they would not have given the credit without the statement. The .question was peculiarly one for the jury. If they believed the witnesses, this court cannot set aside the verdict unless the finding is shown to be either in conflict with or wholly unsupported by the evidence. My opinion, therefore, is, that the hustings court did not err in overruling the motion for a new trial upon the ground set forth in the ninth bill of exceptions. The result is that the judgment must he reversed for the ■errors already indicated, the verdict set aside, and a new trial awarded.
The other judges concurred in the opinion of Staples, J.
The judgment was as follows:
The court is of opinion, for reasons stated and filed with the record, that whilst the hustings court did not err in admitting the evidence set out in the first, second and third bills of exceptions, it ought to have instructed the jury that such evidence was only admissible for the purpose of illustrating and establishing the intent of the accused on making the representations and in obtaining the goods which are the subject of the indictment.
The court is further of opinion that the hustings •court erred in admitting as evidence the paper pur *886 porting to be the assessment of I. "W. Allred’s proPerty in Randolph county, Rorth Carolina, as set out. the sixth bill of exceptions.
The court is further, of opinion there is no other-error in the rulings of the hustings court as set out in the fourth, seventh, eighth and ninth bills of- exception. But for the errors hereinbefore mentioned, it is. considered that the judgment of the hustings court, be reversed and annulled, the verdict of 'the jury set. aside, and a new trial awarded the plaintiff in error. Upon which the said hustings court is to conform to. the views herein expressed.
Judgment reversed.