## MONTIE RALPH ORR

### V.

## COMMONWEALTH OF VIRGINIA

Record No. 840289

Decided April 26, 1985, at Richmond

Present: All the Justices

*Thomas N. Key (Barry M. Tatel; Neil E. McNally; Key, Tatel and King*, on briefs), for appellant.
*Lucy H. Allen, Assistant Attorney General (Gerald L. Baliles, Attorney General*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

We granted this appeal to consider whether the evidence was sufficient to support Montie Ralph Orr's conviction under an indictment charging that he did "unlawfully and feloniously obtain money from Jack P. Fisher, Jr. and Linda Fisher by false pretense with the intent to defraud" in violation of Code § 18.2-178.

Under a contract executed in February 1981, Orr undertook to construct a residence for the Fishers for a base price of $38,000.00, to be paid upon completion of construction from the proceeds of an FHA loan. Later, at the Fishers' request, Orr agreed to make certain changes and to add several "extras" not contemplated in the original plans. According to Orr, payment for the extras was due from time to time during the course of construction. The Fishers understood, however, that no payment was due until final completion of the contract.

The original plans called for a baseboard heating system, but the Fishers decided to substitute a heat pump. Orr subcontracted this work to Hubbard Sheet Metal Works, Inc. The subcontract

provided that Hubbard complete installation in three stages and that Orr make three corresponding payments of $830.00 each for a total of $2,490.00. Offsetting the $700.00 expense of the baseboard heating system, the cost to the Fishers was to be $1,790.00.

Over the next several months, Orr acquired the materials, hired the labor, and personally worked with his crew. The Fishers supplied some of the materials and performed some of the labor. On October 8, 1981, the parties met at the construction site "to go over" some things. At this point, Hubbard had completed the first stage of the heat-pump work, and the first installment under the subcontract was due. The Fishers testified that Orr told them that Hubbard would not return to the job until he had been paid in full and that they would have to advance the part they owed so he could pay Hubbard.

Contradicting the Fishers' testimony, Orr testified that the purpose of the meeting was to discuss all the costs of all the extras. As detailed on a "Statement of Account - Fisher Job", dated October 8, 1981 and introduced as a defense exhibit, the net "[e]stimated cost of extras" was $6,047.27 and cost of "[w]ork in place" was $2,414.00. Orr said that "at that time, I asked them for twenty-five hundred dollars" as payment for the extras then in place. Mr. Fisher told him that he had only $1,700.00 in cash but that he would "pay the other eight hundred in about two weeks." The next day, the Fishers gave Orr a check for $1,700.00. The face of the check was marked for "extras on house".

Orr acknowledged that he never used this money to pay Hubbard. However, he produced a ledger itemizing the expenditures he had made following the October meeting, and he testified that he had applied all of the proceeds of the check to construction of the Fishers' home. There is nothing of record to contradict this evidence, and the Fishers testified that the only payment Orr received for the materials and labor he put into the project was the check and the $140.00 they had deposited to bind the contract.

Faced with growing financial problems, Orr decided to withdraw from the contracting business and seek employment in the Craig County public school system. By this time, the Fishers' home was under roof, and Orr began negotiations to assign the contract to another builder. In a letter addressed to the Fishers, he notified them of these negotiations and asked them to assemble "receipts for paid bills and your total time on the job . . . so that I may assure that you receive proper credit."

In December 1981, Orr and the Fishers joined in executing the assignment and, upon completion of the project, the Fishers paid the assignee the contract price and the cost of all extras, including the cost of the heat pump.

When the Fishers learned that Orr had not paid Hubbard, they consulted an attorney. Advised that Orr had been declared bankrupt and was no longer civilly liable for repayment of the check, the Fishers filed a criminal complaint in May 1983. Orr was indicted in August, convicted by a jury in October, and sentenced by judgment entered November 29, 1983 to pay a fine of $1,000.00 and $1,727.50 in costs.

■ Intent to defraud is one of the four essential elements of the statutory crime charged in this indictment. *See Quidley* v. *Commonwealth*, 221 Va. 963, 965, 275 S.E.2d 622, 624 (1981). We agree with the Attorney General that the Fishers' testimony is sufficient to support a finding that Orr made a false statement.

> But merely showing that the accused knowingly stated what was false is not sufficient; there must also be proof that his intent was to defraud. *Trogdon* v. *Commonwealth*, 72 Va. (31 Gratt.) 862, 872 (1878).
>
> Furthermore, the fraudulent intent must have existed at the time the false pretenses were made, by which the property was obtained. *Fay* v. *Commonwealth*, 69 Va. (28 Gratt.) 912, 918-19 (1877). And in order to determine whether the intent to defraud existed at the time the act was committed, the conduct and representations of the accused must be examined, since intent is "a secret operation of the mind." *Trogdon* v. *Commonwealth*, *supra*, 72 Va. at 872.

*Riegert* v. *Commonwealth*, 218 Va. 511, 518-19, 237 S.E.2d 803, 808 (1977).

■ Although we recognize that the Fishers were obliged to pay twice for the cost of the heat pump, we are of opinion that Orr's behavior shows that he acted without criminal intent. Obviously, if he had meant to defraud the Fishers, he would have appropriated the proceeds of their check to his own use.* Instead, as

---

* We find it significant that the Commonwealth chose not to bring the larceny indictment under Code § 43-13. That statute would have required proof that Orr appropriated the Fishers' money "to his own use while any amount for which he may be liable or become liable under his contract for . . . labor or materials remains unpaid".

shown by the uncontradicted testimony, reinforced by ledger entries, he used all the money the Fishers gave him in a continuing effort to fulfill his contractual commitment to build their home. Once he found he was financially unable to complete the work, he informed them about the assignment he was attempting to negotiate and, as additional evidence of good faith, asked them to calculate the amount of credit they were due for the money and labor they had invested in the project.

Considering "the conduct and representations of the accused", *id*. at 519, 237 S.E.2d at 808, we hold that the evidence adduced at trial was insufficient to prove that Orr acted with intent to defraud "at the time the false pretenses were made", *id*. at 518, 237 S.E.2d at 808, and we will reverse the judgment, dismiss the indictment, and enter final judgment for the defendant.

*Reversed and final judgment.*