COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


JACK CLARK BESTWICK, II
                                    MEMORANDUM OPINION* BY
v.         Record No. 0954-98-4     JUDGE CHARLES H. DUFF
                                       MARCH 28, 2000
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                    James H. Chamblin, Judge

            Warren R. Stein (Warren R. Stein, P.C., on
            brief), for appellant.

            Michael T. Judge, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Jack Clark Bestwick, II (appellant), appeals from his

conviction in the Circuit Court of Loudoun County for obtaining

money by false pretenses.  Appellant contends the evidence was

insufficient to prove he had the intent to defraud the property

owner, or that she relied on his false statements.  Finding no

error, we affirm the judgment of the trial court.

                               I.

     "On appeal, 'we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom.'"  Archer v.

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).  In so doing, we must disregard the evidence of the accused that conflicts with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth.  See Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986).  "This Court does not substitute its judgment for that of the trier of fact, and the trial court's judgment will not be set aside unless plainly wrong or without evidence to support it."  Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999) (citation omitted).

So viewed, the evidence proved that on October 20, 1995, appellant contracted with Donnamarie (the property owner's full legal name) to build a hay barn on her property for $12,000.  The contract price was payable in four installments, and Donnamarie paid the first installment of $3,600 upon signing.  The contract provided that Donnamarie would pay an additional thirty percent of the contract upon delivery of the materials, thirty percent once the barn was framed, and ten percent when the barn was completed.  The contract provided that construction would start on October 20, 1995, and would conclude on November 30, 1995.  Appellant represented to Donnamarie that he was giving her a good deal on the barn because he already had all the construction materials.

On November 2, 1995, appellant delivered part of the necessary construction materials and requested payment of the second installment. When Donnamarie expressed concern that what appellant had delivered did not appear to be all the materials required for completing the barn, appellant advised her that he had purchased all the necessary materials. He told Donnamarie that he was storing the balance of the materials at his shop to protect them from the weather. Donnamarie then wrote appellant a check for $3,600, which was the full thirty-percent installment. In fact, appellant had not yet ordered $1,200 worth of siding that he needed to finish the job.

Although appellant contracted to complete the barn by November 30, 1995, he only finished framing it on November 29, and he did not complete the roof until December 8. On several occasions between October 20 and November 20, appellant advised Donnamarie that he could not work on the barn because of inclement weather conditions. As of November 30, Donnamarie had already paid ninety percent of the contract price.

Despite the completion of the roof, the partially constructed barn was not suitable for storing hay. Donnamarie testified that she left multiple telephone messages for appellant, requesting that he complete the barn. On December 19, 1995, after appellant failed to return her calls, Donnamarie went to appellant's shop. She testified that she did not see

the materials necessary for completing her barn inside the shop. When she asked appellant why he had not completed the barn, appellant responded that his mother was "deathly ill" in Pennsylvania.

On January 26, 1996, Donnamarie called appellant inquiring about the barn. Appellant told her that the materials were covered by snow. Donnamarie went to appellant's property later that day, but she saw neither much snow, nor any evidence of her building materials. Appellant performed no more work on the barn until May 7, 1996, when, one week before the trial in the civil suit Donnamarie filed against appellant,[1] he put the siding on the barn. Donnamarie subsequently obtained a court order barring appellant from the property.

Eric Loman, an employee at The Lumber Yard, testified that appellant ordered siding from his company in late November or early December 1995. The siding was delivered to Loman's warehouse shortly thereafter, and it remained there until appellant picked it up and paid for it on May 3, 1996.

Appellant denied defrauding Donnamarie and claimed that he was delayed by circumstances beyond his control, including inclement weather. He denied ever telling Donnamarie that he had all the materials he needed to complete her barn.

_____

[1] Donnamarie filed the lawsuit in January 1996.

- 4 -

II.

In order to convict a defendant of larceny by false pretenses under Code § 18.2-178, "the Commonwealth must prove: (a) that the accused intended to defraud; (b) that a fraud actually occurred; (c) that the accused used false pretenses to perpetrate the fraud; and (d) that the false pretenses induced the owner to part with his property." Wynne v. Commonwealth, 18 Va. App. 459, 460, 445 S.E.2d 160, 161 (1994) (en banc). The victim need only rely "to some degree" on the false pretense in order for the Commonwealth to satisfy the fourth prong of this test. Swinson v. Commonwealth, 16 Va. App. 923, 925, 434 S.E.2d 348, 349 (1993).

"[M]erely showing that the accused knowingly stated what was false is not sufficient; there must also be proof that his intent was to defraud." Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 808 (1977). Since direct proof of intent is often impossible, it can be shown by circumstantial evidence. See Orr v. Commonwealth, 229 Va. 298, 301, 329 S.E.2d 30, 32 (1985). "The conduct or representation of the accused may be considered to determine whether the intent to defraud existed at the time the act was committed." Grites v. Commonwealth, 9 Va. App. 51, 56, 384 S.E.2d 328, 331 (1989).

Appellant lied to Donnamarie on November 2, 1995, and January 26, 1996, when he told her that he had all the materials

for the hay barn.  Appellant did not order the siding needed to finish the shed until late November 1995, and he did not pick up and pay for the siding until May 1996—approximately four months after Donnamarie filed suit against appellant.

Donnamarie expressed concern to appellant on November 2 when she saw that he had not delivered all the materials to her. And it was only after he represented that the remainder of the materials were at his shop that she wrote him the second installment check.

The trial court believed the Commonwealth's evidence and rejected appellant's evidence to the contrary.  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The trial court could infer beyond a reasonable doubt from the Commonwealth's evidence not only that appellant intended to defraud Donnamarie, but also that she relied upon his false representations in paying him the second installment. Accordingly, we cannot say that the trial court's decision was either plainly wrong or without evidence to support it.

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

Benton, J., dissenting.

In pertinent part, Code § 18.2-178 provides that "[i]f any person obtain, by any false pretense or token, from any person, with intent to defraud, money or other property which may be the subject of larceny, he shall be deemed guilty of larceny thereof." This statute requires the Commonwealth to prove beyond a reasonable doubt "(1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for that purpose." Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977).

> The fraud is accomplished by means of the
> false pretenses where the false pretenses to
> some degree induced the owner to part with
> his property. The false pretense must be a
> representation as to any existing fact or
> past event. Merely showing that the accused
> knowingly stated what was false is not
> sufficient; there also must be proof that
> his intent was to defraud and that the
> fraudulent intent existed at the time the
> false pretenses were made.

Grites v. Commonwealth, 9 Va. App. 51, 56, 384 S.E.2d 328, 331 (1989).

"[W]hether a criminal conviction is supported by evidence sufficient to prove guilt beyond a reasonable doubt is not a question of fact but one of law." Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601-02 (1986). Furthermore, in viewing the evidence in the light most favorable to the

- 8 -

Commonwealth, "we cannot disregard credible, unimpeached evidence of the Commonwealth which exculpates the accused and creates a reasonable doubt of his guilt." Harward v. Commonwealth, 5 Va. App. 468, 479, 364 S.E.2d 511, 516 (1988).

The contract between Jack Clark Bestwick, II, and Donnamarie for Bestwick to build a hay barn on Donnamarie's property specified that the contract price of $12,000 was "to be [paid to Bestwick] as follows:  30 [percent] down.  30 [percent] materials on site.  30 [percent] framed.  10 [percent when the work was] final."  The trial judge found Bestwick guilty of obtaining money by false pretenses in connection with the second payment, which required "30 [percent of the contract price to be paid when] materials [were] on site."

The trial judge found that Bestwick made false statements to Donnamarie at the beginning of November concerning the siding materials.  The trial judge did not find, however, that after Bestwick received the second payment he did nothing in furtherance of fulfilling his promise to build the barn.  Cf. Norman v. Commonwealth, 2 Va. App. 518, 521, 346 S.E.2d 44, 46 (1986) (noting that the jury could infer intent to defraud because the accused did nothing in furtherance of his promise to build).  Although the trial judge may have reasonably concluded that Bestwick lied to Donnamarie about the whereabouts of the materials, that circumstance is not sufficient to prove Bestwick

had the intent to defraud.  See Orr v. Commonwealth, 229 Va. 298, 301, 329 S.E.2d 30, 32 (1985); Grites, 9 Va. App. at 57, 384 S.E.2d at 332.  Indeed, no evidence proved that Bestwick had a fraudulent intent when he lied about having secured all the material.  Absent that proof, the conviction cannot stand.  See Riegert, 218 Va. at 518, 337 S.E.2d at 808.

The evidence proved that on October 20, 1995, Bestwick began the project and received from Donnamarie the initial payment of $3,600.  After the contract was signed, Bestwick promptly applied for a zoning permit, and he commenced preliminary work before he received the permit.  Cf. Norman, 2 Va. App. at 521, 346 S.E.2d at 46 (noting that the accused never submitted an application for a necessary zoning change).  By November 2, 1995, Bestwick had delivered some materials to the construction site and requested the second payment.  Noting that all of the materials were not there, Donnamarie told Bestwick, "it is my understanding that 'materials on site' mean[s] that all of my materials are supposed to be here at my property." She testified that Bestwick said he kept some of the materials at his shop because he was concerned that the tin siding could be blown by the wind and bent or broken if left at the construction site and because the rain and snow also would damage the materials if they were left at the construction site.

Donnamarie accepted Bestwick's explanation, gave him a check for $3,600, and wrote on the check "second 30 [percent] payment, some materials on-site."  Clearly, Donnamarie's notation on the check proves she did not pay Bestwick $3,600 based on a belief that all of the materials were on site.  She was aware that some of the materials were missing.  Thus, even if Bestwick lied about the reason why all the materials were not on site, Donnamarie was aware that the materials had not been placed on her property.

The evidence contains no proof of "a present intent to defraud" at that time.  Riegert, 218 Va. at 519, 337 S.E.2d at 808.  "[W]hile involving at least by inference false statements of existing facts, [the evidence] is not inconsistent with . . . [Bestwick's] intent ultimately to perform his contract."  Grites, 9 Va. App. at 59, 384 S.E.2d at 333.  Indeed, Eric Loman testified that Bestwick ordered the materials at The Lumber Yard in November of 1995.  Although the evidence does not establish whether Bestwick did so before or after Donnamarie paid the second installment, the placing of the order further demonstrates his intent to build the barn.  The materials, which were not in stock, cost $1,292 and were delivered to The Lumber Yard by the supplier in late November or December of 1995.  Although Bestwick did not obtain the materials from The Lumber Yard until May 1996, they were being held for his payment and

delivery instructions.  Consistent with Bestwick's statement to Donnamarie about the possibility of damage to the siding if delivered to the site, Loman testified that the siding "is easily damaged."

The evidence clearly proved that some of the delay in completing the barn was weather related.  Donnamarie testified that on several occasions between October 20 and November 20, Bestwick informed her that he could not work on the barn because "it was too windy, or it was too cold, or it was raining."  He also told her that if he did not have enough days of good weather to completely "side all of the barn, that part of the siding [which was affixed] could be blown off."  She further testified that there was a "big snow that year . . . [at the] end of '95 beginning of '96."

By November 22, 1995, Bestwick had not completed the framing.  Donnamarie testified that she expressed her concern to Bestwick that he would not complete the barn by the finish date and gave Bestwick a check for only $1,500.  She said Bestwick agreed to this partial payment of the $3,600 installment, which was due when the barn was "framed."  On November 30, 1995, when Bestwick had completed the framing, Donnamarie gave him a check for $2,100, the balance of the third installment.  Bestwick continued to work on the barn five days in early December and completed the roof.

The Commonwealth's evidence is also consistent with procrastination by Bestwick. Donnamarie testified that although a roof was placed on the barn by early December, "all [she] had [by this point was] . . . framing and a roof." Because winter had arrived, she had to store "hay in [her] garage, in [her] wood shed, in the horse barn," and wherever she could find a place to store it. She left Bestwick multiple telephone messages requesting that he complete the barn. When Bestwick did not return her calls, Donnamarie went to his shop on December 19, 1995, and observed that the materials to complete the barn were not inside the shop. In response to her inquiry why he had not completed the barn, Bestwick said his mother was "deathly ill" in Pennsylvania. Sympathizing with his situation, Donnamarie decided not to question Bestwick about the materials.

On January 26, 1996, Bestwick called Donnamarie and said that if the weather was good the next few days, he would work on the barn. When Donnamarie responded that the weather was good that day, Bestwick said that he could not work that day because the materials were under snow and he would have to remove the snow before he could work. Donnamarie testified that she went to Bestwick's shop and observed little snow and saw no materials. She testified that in May 1996, after she filed a civil suit against Bestwick, he appeared and put siding on the

barn.  Before he was able to complete the barn, however, Donnamarie obtained a court order barring him from her property.

Although the trier of fact was privileged to reject parts of Bestwick's testimony, a significant part of it is consistent with Donnamarie's testimony.  Bestwick testified that after he signed the contract, he applied for a zoning permit to construct the building and began constructing the trusses for the roof. He testified that he already had a substantial amount of excess lumber and siding available from other jobs.  Bestwick also testified that the zoning inspector did not arrive until after November 2 and did not issue the permit until two days after his visit.

Bestwick testified that when he received the second payment on November 2, he told Donnamarie he had the materials at his shop, not in his shop, and would bring them as needed "because of conditions of the job site and to keep them protected."  He said he kept equipment, tools, and supplies in a separate storage shed.  He further testified that Donnamarie did not see the siding materials he already had because they were stored next to the storage shed where he had a "lumber rack" and "where [he] could protect them" from theft and damage.  Although he had to order additional materials to complete the barn, he did not tell Donnamarie he had not paid The Lumber Yard for the additional materials.

Bestwick testified that the weather created difficult conditions at the site during the framing.  After completing the roof, "the weather set in and got bad[,] . . . wet conditions, then wind, then snow hit . . . , and working conditions just got bad."  Bestwick conceded that he collected payment for "some material-on-site" even though he had not yet purchased all of the materials.  As in Orr, however, no evidence proved that Bestwick "appropriated the proceeds of [the] check to his own use."  229 Va. at 301, 329 S.E.2d at 32.  Although dilatory, he paid for the material being held at The Lumber Yard and worked on the barn until Donnamarie ordered him off her property.

The proof in this record "is not inconsistent with an intent ultimately to perform his contract with [Donnamarie]."  Grites, 9 Va. App. at 59, 384 S.E.2d at 333.  Proof that "[m]erely show[s] . . . the accused knowingly stated what was false is not sufficient" to sustain a criminal conviction under Code § 18.2-178.  Id. at 56, 384 S.E.2d at 331.  Likewise, mere proof of civil liability on a contract is insufficient, standing alone, to prove intent to defraud.  See Riegert, 218 Va. at 520-21, 237 S.E.2d at 809.

No evidence proved that Bestwick took the second installment on the contract with the intent not to complete his obligation on the contract.  The evidence proved Bestwick began preliminary work before he received the zoning permit.

- 15 -

Donnamarie acknowledged that he brought materials to the site. Indeed, Bestwick continued to work on the barn after he received the second payment. Donnamarie testified that soon after the second payment, Bestwick constructed the framing for the barn and completed enough of the work on the barn after that second payment to justify a third payment for finishing the framing. She also testified that Bestwick later completed most of the work on the barn. That conduct "is not inconsistent with a lack of intent to defraud." Grites, 9 Va. App. at 59, 384 S.E.2d at 333.

Although Bestwick lied about having paid for the materials, the evidence proved he had ordered them. The evidence further proved that Bestwick continued to work on the barn after receiving the second payment and after ordering the materials from The Lumber Yard. The Commonwealth did not contradict Bestwick's assertion that the unusually harsh winter interfered with his ability to finish the barn. His testimony is supported by Donnamarie's testimony that several feet of snow fell to the ground during the big snow that winter.

Furthermore, the Commonwealth's evidence proved that Bestwick and his helpers worked on the barn on at least five occasions in December 1995 and attempted to complete the barn in May 1996. Bestwick's continued, albeit dilatory, efforts to follow through on the contract are evidence of his lack of

intent to defraud Donnamarie when he took the payment.  The evidence does not dispute Bestwick's assertion that he was unable to complete the contract in 1995 because of inclement weather and an ill family member.

"Because the Commonwealth's evidence is consistent with [Bestwick's] innocence in that he lacked an intent to defraud, the Commonwealth's evidence as a matter of law is insufficient to establish his guilt beyond a reasonable doubt."  Grites, 9 Va. App. at 59, 384 S.E.2d at 333.  This case presents issues properly left to resolution for damages in a civil action.

For these reasons, I would reverse the conviction.