COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges Raphael and White

DANIEL CARLTON RAILEY

MEMORANDUM OPINION[*] BY
v.      Record No. 1816-23-2      CHIEF JUDGE MARLA GRAFF DECKER
AUGUST 27, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
Timothy J. Hauler, Judge Designate

(Lauren Brice, Assistant Public Defender; Virginia Indigent Defense
Commission, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Angelique Rogers, Assistant
Attorney General, on brief), for appellee.


Daniel Carlton Railey appeals his conviction for obtaining money by false pretenses in

violation of Code § 18.2-178.[1] He contends that the evidence failed to prove he acted with the

requisite intent to defraud. For the following reasons, we hold that the evidence was sufficient to

support his conviction and affirm.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Railey also was charged with grand larceny, but the trial court granted his motion to
strike the evidence and dismissed the charge.

[2] Having examined the briefs and the record in this case, the panel unanimously holds
that oral argument is unnecessary because "the appeal is wholly without merit." *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a). In addition, "the dispositive issue or issues have been
authoritatively decided," and Railey "has not argued that the case law should be overturned,
extended, modified, or reversed." *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).

BACKGROUND[3]

While at a farm supply store in Mecklenburg County on June 17, 2020, Edward Coleman heard the owner of the store talking to Railey about working on a bulldozer. Coleman had a bulldozer that needed repair and asked Railey if he was interested in performing the work for him. Railey responded, "by all means." He said that he had a large shop in North Carolina and ran a small construction company employing 14 people. After their discussion Railey went with Coleman to the local garage where Coleman stored his bulldozer. Railey determined that the hydraulic pump on the bulldozer "had gone bad." He said that he would rebuild the pump at his shop and reinstall it on the bulldozer for $955. Immediately after Coleman gave Railey a check for $955, they went to Coleman's bank where Railey cashed the check and then left with the pump. Coleman testified that the pump was "worth between 500 and $1,000."

Railey contacted Coleman "almost daily for about ten days" with excuses for why the repair was not completed, but then all communication "just stopped completely." Coleman repeatedly telephoned Railey to ask about the pump, but Railey did not answer the calls or respond to voicemail messages. Several months later Coleman contacted Lieutenant Mark Claiborne of the Mecklenburg County Sheriff's Department. Claiborne instructed Coleman to send Railey a letter demanding the return of the hydraulic pump and the $955 within 30 days. Railey received the letter on September 18, 2020, but he did not respond to it.[4]

---

[3] On appeal, we review "the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." *Lambert v. Commonwealth*, 70 Va. App. 740, 746 (2019) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 652 (2015)). "Viewing the evidence through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence. *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018) (per curiam)).

[4] The letter was not entered into evidence at trial because Coleman did not have a copy of it and Railey said he could not find it.

In January 2021, Lieutenant Claiborne sought an indictment against Railey for obtaining money by false pretenses. After Railey was arrested, he brought the pump to the Sheriff's Office. Claiborne notified Coleman of its return, and a local mechanic retrieved the pump. There was "no evidence" that "any work [had been] done on it." Railey made full restitution of the $955 payment.

At his bench trial, Railey stipulated that he entered into an oral agreement with Coleman to repair the hydraulic pump. He testified that he rebuilt the pump at his shop in North Carolina but did not immediately return it to Coleman because he "got sick" with heart problems and high blood pressure. He first indicated that he repaired the pump "a few weeks" before he became ill, but he later said that it took him "about two and a half months to actually finish the pump because of [his] health." He insisted that he told Coleman about his health problems. Railey testified that he tried to call Coleman after receiving the demand letter. He said he could not contact Coleman because there was no telephone number on the letter and he got no answer when he called the number Coleman gave him in June 2020. According to Railey, he did not leave a message because Coleman's voicemail was "full," and he did not use text messages.

Railey further testified that the pump was fixed when he received the demand letter but he was unable to complete the work on the bulldozer. He explained that he had not asked his employees to return the pump because they worked "out of town" and he was so ill he never considered that option. He also said that he wanted to handle the situation himself. He admitted returning the hydraulic pump and $955 after his arrest but claimed that he was already planning to return it before his arrest.

Coleman testified in rebuttal that his phone number never changed after he gave it to Railey in June 2020, that his voicemail "does work," and he received no voicemail messages from Railey.

Railey argued that the Commonwealth's evidence failed to prove he took the hydraulic pump with fraudulent intent. He insisted that the delay in returning the pump was caused by his medical problems and the fact that his shop was in North Carolina. The Commonwealth argued that the evidence proved fraudulent intent because Railey's claims of ill health were not substantiated by medical documentation, Coleman refuted Railey's claim that his voicemail was full, and Railey did not return the pump or the money until after he was arrested.

Finding that "all of the competent evidence of record before the court" proved Railey intended to commit fraud, the trial court convicted him of obtaining money by false pretenses.[5] It imposed a suspended sentence of five years.

ANALYSIS

Railey contends the evidence was insufficient to prove that he formed the intent to defraud Coleman at the time he agreed to repair the hydraulic pump and accepted the money to fix it. He also argues that the trial court erred by rejecting his hypothesis of innocence.

The Court is guided by well-established legal principles when considering the sufficiency of the evidence. We view the evidence "in the light most favorable to the Commonwealth, the prevailing party at trial." *Barnett v. Commonwealth*, 73 Va. App. 111, 115 (2021) (quoting *Smith v. Commonwealth*, 66 Va. App. 382, 384 (2016)). The appellate court affirms the trial court's judgment "unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." *Pulley v. Commonwealth*, 74 Va. App. 104, 123 (2021) (quoting *Poole v. Commonwealth*, 73 Va. App. 357, 363 (2021)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72

---

[5] Railey was charged with grand larceny and obtaining money by false pretenses from another person the day before he met Coleman, but the Commonwealth nolle prosequied the charges at the conclusion of Railey's trial.

Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). "[T]he relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Washington v. Commonwealth*, 75 Va. App. 606, 615 (2022) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016)). "In applying this standard of review, we eschew the divide-and-conquer approach, which examines each incriminating fact in isolation, finds it singularly insufficient, and then concludes that the sum of these facts can never be sufficient. Instead, in an appellate sufficiency review, the evidence is 'considered as a whole.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

As Code § 18.2-178(A) makes clear, a person who obtains "money . . . or other property that may be the subject of larceny," from another person "by any false pretense or token . . . with intent to defraud" is guilty of larceny. Code § 18.2-178(A). Thus, "[t]o sustain a conviction of larceny by false pretense, the Commonwealth must prove," among other elements, "an intent to defraud."[6] *Austin v. Commonwealth*, 60 Va. App. 60, 66 (2012) (quoting *Bourgeois v. Commonwealth*, 217 Va. 268, 272 (1976)). Moreover, "[t]here must be proof that . . . 'the fraudulent intent . . . existed at the time the false pretenses were made, by which the property was obtained.'" *Id.* (quoting *Orr v. Commonwealth*, 229 Va. 298, 301 (1985)). "'Intent to defraud' has been defined by this Court as acting 'with an evil intent, or with the specific intent to deceive or trick.'" *Beshah v. Commonwealth*, 60 Va. App. 161, 170 (2012) (quoting *Burrell v. Commonwealth*, 50 Va. App. 72, 86-87 (2007)). Such intent "means that the defendant intend[ed] to 'deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter, or terminate a right, obligation or power with reference to property.'" *Sarka v. Commonwealth*, 73

---

[6] On appeal, Railey challenges only the element of intent to defraud.

- 5 -

Va. App. 56, 67-68 (2021) (alteration in original) (quoting *Bray v. Commonwealth*, 9 Va. App. 417, 422 (1990)).

And, it is axiomatic that "[i]ntent may, and most often must, be proven by circumstantial evidence." *Id.* at 67 (quoting *Fleming v. Commonwealth*, 13 Va. App. 349, 353 (1991)). "In determining a defendant's intent, '[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Id.* (alteration in original) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "Circumstances implying fraudulent intent include . . . false statements, . . . subsequent failure to perform the work, . . . efforts to avoid communicating with the [victim], . . . and refusal to return the advanced funds . . . ." *Dennos v. Commonwealth*, 63 Va. App. 139, 145-46 (2014) (citations omitted). "[W]hether the required intent exists is generally a question of fact for the trier of fact." *Brown v. Commonwealth*, 68 Va. App. 746, 787 (2018) (alteration in original) (quoting *Nobles v. Commonwealth*, 218 Va. 548, 551 (1977)).

Here, after assessing the problem with Coleman's bulldozer, Railey offered to rebuild the hydraulic pump at his shop in North Carolina and then reinstall it on the bulldozer. Coleman gave Railey a check for $955 to do the work. Railey immediately cashed the check at Coleman's bank and left with the pump. While he communicated with Coleman "almost daily" for the first ten days, he gave numerous excuses for not having repaired the pump. He then completely stopped communicating with Coleman, refusing to take his calls or respond to his voicemails. "A defendant's 'evasive conduct' and a 'general lack of communication with the victim[] about any problems or other reasons asserted for non-payment or non-performance' are probative of intent to defraud." *Sarka*, 73 Va. App. at 68 (quoting *Austin*, 60 Va. App. at 67, 68-69).

Coleman repeatedly tried to reach Railey by phone for more than two months before contacting law enforcement. Coleman then sent Railey a demand letter seeking return of the

- 6 -

hydraulic pump and the $955 within 30 days. Although Railey acknowledged receiving the letter on September 18, 2020, he never responded to it. Coleman refuted Railey's claim that he could not leave messages because Coleman's voicemail was full. Railey did not return the pump and the $955 until after his arrest in March 2021, well over 30 days from the demand letter. Further, contrary to Railey's claim that he repaired the pump, Coleman testified that there was no evidence any work had been done on it.

From these facts and circumstances a rational trier of fact could easily conclude that Railey obtained $955 to repair a hydraulic pump he never fixed and used the money for his own personal gain. *See Commonwealth v. Moseley*, 293 Va. 455, 466 (2017) (holding that "the totality of the suspicious circumstances proved beyond a reasonable doubt" that the defendant committed the offenses); *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003) ("While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" (quoting *Derr v. Commonwealth*, 242 Va. 413, 425 (1991))).

After accepting Coleman's money to rebuild the hydraulic pump, Railey initially offered numerous excuses for not repairing it and then completely stopped communicating with Coleman. He refused to return the pump and the advanced funds upon Coleman's request. These factors all supported the trial court's finding that Railey acted with fraudulent intent. *See, e.g.*, *Rader v. Commonwealth*, 15 Va. App. 325, 330-31(1992) (holding that a "general lack of communication with the homeowners" about the problems with the project is probative of fraudulent intent); *Norman v. Commonwealth*, 2 Va. App. 518, 521 (1986) (holding that intent to defraud can be inferred from a contractor's failing to do anything in furtherance of a contract after receiving an advance and not notifying the consumer that he was financially unable to perform contract).

Railey relies on *Orr v. Commonwealth*, 229 Va. 298, and *Booth v. Commonwealth*, 4 Va. App. 484 (1987), to support his argument, but the cases are distinguishable from this case. In *Orr*, 229 Va. at 299-301, the Supreme Court held that the defendant contractor had no intent to defraud the homeowner when he asked for $1,700 to install a heat pump but used the money for other items for the house, which benefitted the homeowner. Here, Railey benefitted only himself by accepting Coleman's payment for work he did not do. In *Booth*, 4 Va. App. at 486, 491-92, this Court held that there was no evidence of fraudulent intent in a construction fraud case because the contract did not specify a completion date, the defendant had begun some work on the project but was hindered by bad weather and the death of his father, and he told the homeowner he would complete the work after receiving the demand letter. In this case, Railey immediately cashed the advanced payment check and made no repairs to the pump or the bulldozer. He did not respond to Coleman's demand letter when he received it and returned the pump and the $955 only after he was arrested.

The facts and circumstances of this case also fail to support Railey's hypothesis of innocence. "Merely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." *Miles v. Commonwealth*, 205 Va. 462, 467 (1964). "In practical terms, this means that — even if 'not inherently incredible' — a defendant's exculpatory version of events need not be accepted by the factfinder." *Vasquez*, 291 Va. at 250 n.13 (quoting *Montgomery v. Commonwealth*, 221 Va. 188, 190 (1980) (emphasis omitted)). Further, "the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Case v. Commonwealth*, 63 Va. App. 14, 23 (2014) (quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)).

It is true that "[w]hen facts are equally susceptible to more than one interpretation, one of which is consistent with the innocence of the accused, the trier of fact cannot arbitrarily adopt an inculpatory interpretation." *Id.* (quoting *Moody v. Commonwealth*, 28 Va. App. 702, 706 (1998)). "But this axiomatic proposition has meaning only after the factfinder 'resolves all conflicts in the evidence.'" *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004) (quoting *Feigley v. Commonwealth*, 16 Va. App. 717, 724 (1993)); *see Vasquez,* 291 Va. at 250 ("the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder . . . could have found that the incriminating evidence renders the hypothesis of innocence unreasonable" (quoting *Hudson*, 265 Va. at 513)). "[W]here the factfinder has rejected the hypothesis as *unreasonable*, that determination cannot be overturned as arbitrary unless no rational factfinder would have come to that conclusion." *Haskins*, 44 Va. App. at 9.

Moreover, "determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Washington*, 75 Va. App. at 616 (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011)). Railey argues that the trial court did not find his testimony incredible. In finding Railey guilty, however, the court relied on "all of the competent evidence of record before the court." The reasonable inference is that the court rejected Railey's explanation for failing to rebuild and return the pump because it did not find Railey's testimony to be "competent." The court "found by a process of elimination that the evidence [did] not contain a reasonable theory of innocence." *Ervin v. Commonwealth*, 57 Va. App. 495, 519-21 (2011) (en banc) (quoting *Haskins*, 44 Va. App. at 9).

"The rejection of a hypothesis of innocence 'is binding on appeal unless plainly wrong.'" *Id.* at 519 (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 12-13 (1997)). Here, the trial court's ruling was not plainly wrong. Railey insisted that he told Coleman about his health problems and tried to contact him several times after receiving the demand letter. Coleman testified that for about ten days after taking the pump Railey called him almost daily with excuses for not having rebuilt it but then communications ceased. He received no more calls from Railey, nor did Railey leave any voicemail messages. Railey did not provide any medical documentation or other evidence to corroborate his alleged health problems in the weeks following his agreement with Coleman.[7] In any case, by his own admission, Railey was feeling better by September 2020. Yet he did not respond to Coleman's demand letter, did not repair the pump, and did not return it and the $955 until after he was arrested. All of these facts support the trial court's rejection of Railey's hypothesis of innocence. *See id.* at 519-21 (holding that a fact finder may properly reject a defendant's hypothesis of innocence).

CONCLUSION

The trial court's judgment was not plainly wrong or without evidence to support it. The evidence was sufficient to prove that Railey had the requisite intent to defraud Coleman when he agreed to rebuild and reinstall the hydraulic pump and immediately cashed Coleman's check for $955, but failed to repair the pump and ignored Coleman's attempts to contact him. Consequently, Railey's conviction for obtaining money by false pretenses is affirmed.

*Affirmed.*

---

[7] *See generally Mayhew v. Commonwealth*, 20 Va. App. 484, 492 (1995) (explaining that circumstances known to a defendant present an affirmative defense for which he has the burden of producing supporting evidence).