BUMGARDNER, Judge.
Quinton Lazarr Hunley appeals his conviction of possession of cocaine with intent to distribute in violation of Code § 18.2-248. He contends the evidence was insufficient to prove that he knowingly and intentionally possessed the cocaine. We conclude that the evidence was sufficient to establish that fact. Accordingly, we affirm his conviction.
On appeal, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). This Court does not substitute its judgment for that of the trier of fact, see Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992), and the trial court’s judgment will not be set aside unless plainly wrong or without evidence to support it. See Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998).
So viewed, the evidence established that state police officers were interdicting narcotics traffic at the Amtrak station in Henrico County. The officers had received information from New York that two individuals, a male and female, had purchased one-way tickets to Richmond only ten minutes before departing. The officers looked for abnormal behavior by a couple disembarking the train from New York. Investigator Irwin saw that the defendant and codefendant, Celestine Yancy, quickly exited the crowded train, walked side-by-side through the crowd faster than the other travelers, and always looked straight ahead. Their very quick pace, lack of conversation, and straight-ahead focus attracted Irwin’s attention. *560 One officer described Yancy as “determined to get through the building.”
Irwin followed the two through the terminal and approached them in the parking lot. Sergeant McLean accompanied him outside. The defendant carried a brown and gold tote bag at all times. Yancy carried a leather satchel and a red, white and blue cloth zippered bag. As they exited the terminal, Yancy handed the defendant the red, white and blue bag. Irwin identified himself, announced that he was interdicting narcotics and firearms traffic into Richmond, and asked if they would cooperate in his efforts. Both said, “yes,” but Yancy “became visibly, very visibly afraid or scared at that point. She was trembling. Her speech was ... very low and somewhat stumbling.” Irwin told the two that he was not arresting or detaining them but asked if they would be willing to answer some questions. They indicated they were willing to cooperate.
Irwin first asked if he could see their train ticket receipts. The defendant looked at Yancy, searched his pockets, but did not find their tickets. Yancy made no attempt to search for the tickets. The two produced identification when Irwin asked for it, and Yancy volunteered that they had arrived from New York. When asked if the bags they were carrying belonged to them, the defendant stated, “they’re our bags.” The two suspects denied carrying drugs or guns. Irwin then asked consent to search the bags. When Yancy indicated that she felt he was interfering with her rights, Irwin reiterated that they were not under arrest. Yancy consented to a search but stated, “I really don’t want you going through my bags, but I will show you what’s in the bags.”
Yancy took the red, white and blue bag back from the defendant, unzipped it, and started moving the contents around. McLean saw two shoeboxes for children’s hiking boots, which Yancy indicated were for her children. He also saw a new pair of boots loose in the bag, but both boxes appeared to have weight in them despite the fact that one pair was not in its box. McLean told Yancy that he appreciated *561 her showing them the contents, but for officers’ safety he preferred to search the bag himself.
The group moved to a less conspicuous location in the parking lot near a truck when the defendant said he was embarrassed by being searched in the middle of the lot. Yancy zipped up the red, white and blue bag, and the defendant carried both it and the brown and gold bag toward the truck. As they walked toward it, Yancey remarked, “they even know what kind of truck we drive.”
Irwin asked permission to pat-down both suspects for weapons. While female Agent McCaffey patted down Yancy, Irwin kneeled down in front of the defendant’s brown and gold bag. He looked up at the defendant while kneeling over the bag and asked if he could search. Yancy said “yes”; the defendant with his “head hung down” said, “go for it. You’re just doing your job.” Irwin unzipped the brown and gold bag and under a blanket saw what appeared to be a black garbage bag. He reached in the tote bag and felt two hard, rectangular objects in the garbage bag. Irwin pulled out the garbage bag, which was knotted, and laid it on top of the tote bag. He asked the defendant for permission to untie the knot. The defendant again said, “go for it, you’re just doing your job.” Irwin retrieved two six-by-two inch rectangular blocks wrapped in gray duct tape. Though he could not see in the packages, Irwin thought the blocks were drugs because the wrapping was consistent with illegal narcotics packaging.
As Irwin held up the two rectangular objects, but without indicating his suspicion that they were drugs, the defendant gave a “very deep sigh” and shook his head. Irwin then announced that he believed the bricks were cocaine. The officers arrested both suspects, handcuffed them, and escorted them to an office in the station for further investigation. A field test indicated that the items were in fact cocaine, and, at that point, Yancy volunteered, “It’s mine.” One of the shoe-boxes in the red, white and blue bag contained a third brick. In total, the drugs weighed 6.6 pounds.
*562 During the search incident to arrest, the officers recovered from the defendant a small amount of currency, a pager, and two train ticket stubs from New York to Richmond. The ticket stubs were in his pocket but were issued in the name of Delores Russell Anne. Neither the defendant nor Yancy possessed identification in that name. A cellular telephone and $2,000 in small bills were found in Yancy’s leather satchel. An expert testified that the cell phone and pager were significant in the presence of the drugs because drug dealers often use them in conducting their business. He also stated that 6.6 pounds of drugs is inconsistent with personal use and New York is a source city for contraband entering Richmond.
The defendant’s sole contention on appeal is that the evidence failed to establish that he was aware of the presence of the cocaine inside the brown and gold bag or that he was aware of its nature and character. He contends that Yancy’s statement of ownership of the drugs and the evidence of the $2,000 cash in her possession rebutted the inference of knowledge, which arose from his possession of the cocaine. We disagree.
To convict the defendant of possession of cocaine, the Commonwealth must show that the “defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. Physical possession giving the defendant ‘immediate and exclusive control’ is sufficient. However, possession need not always be exclusive. The defendant may share it with one or more. The duration of the possession is immaterial....” Ritter v. Commonwealth, 210 Va. 732, 741, 173 S.E.2d 799, 805-06 (1970). “Possession of a controlled substance gives rise to an inference of the defendant’s knowledge of its character.” Josephs v. Commonwealth, 10 Va.App. 87, 101, 390 S.E.2d 491, 498-99 (1990) (en banc) (citation omitted). See Woodson v. Commonwealth, 245 Va. 401, 406, 429 S.E.2d 27, 30 (1993); Gillis v. Commonwealth, 215 Va. 298, 208 S.E.2d 768 (1974). Knowledge may also be proven “by evidence of acts, declarations or conduct of the accused from which the inference may *563 be fairly drawn that he knew of the existence of the narcotics at the place where they were found.” Ritter, 210 Va. at 741, 173 S.E.2d at 805-06 (citation omitted).
Viewing the evidence and all reasonable inferences in the light most favorable to the Commonwealth, we hold that the defendant knowingly and intentionally possessed the cocaine seized from his bag. The defendant acted suspiciously as he and his companion disembarked a train from New York, a known source for drugs. The two walked very quickly from the train through the crowd to the parking lot. The train ticket stubs, which the defendant said he could not find, were later discovered on his person but in a false name.
The defendant stated, “these are our bags.” At all times, the defendant was in exclusive possession of, and asserted authority over, the brown and gold tote bag. Officer Irwin asked the defendant for consent to search the brown and gold bag and for permission to untie the knot in the garbage bag. Both times the defendant consented. As the bricks of cocaine were discovered, the defendant, with his head hung down, gave a deep sigh, and shook his head. The facts and circumstances surrounding the defendant’s response support as reasonable the inference that showed the defendant knew exactly what the police were discovering.
The defendant claims that an innocent inference could also arise from his response. However, when the trier of fact accepted an inference favorable to the Commonwealth and the inference was reasonable and justified by the evidence, an appellate court is not at liberty to adopt the opposite inference. An appellate court must “discard the evidence of the accused in conflict with that of the Commonwealth and regard as true all the credible evidence favorable to the Commonwealth and all favorable inferences to be drawn therefrom.” Parks v. Commonwealth, 221 Va. 492, 497, 270 S.E.2d 755, 759 (1980) (emphasis in original). “[T]he inferences to be drawn from proved facts are within the province of ... the court ..., so long as they are reasonable and justified.... That it is possible to surmise or imagine that [the accused] *564 had some other purpose different from that found by the [court] is not enough to overcome [its] ... reasonable and justified conclusion.... ” Johnson v. Commonwealth, 209 Va. 291, 295, 163 S.E.2d 570, 574 (1968) (citations omitted).
The defendant asserts that Yanc/s claim of ownership was controlling on the issue of knowledge and intent. Yancy made this statement after the officers had formally arrested the two and had field tested the cocaine. Her claim of ownership was not the only evidence of knowledge and intent. Yancy’s claim neither refuted the other evidence that the defendant knew drugs were in his bag nor contradicted an inference that the two acted jointly in transporting the drugs. The fact finder was entitled to disbelieve any or all testimony of the witnesses. See Bridgeman v. Commonwealth, 3 Va.App. 523, 528, 351 S.E.2d 598, 601 (1986) (the credibility of the witnesses and the weight to be accorded their testimony are matters solely for the fact finder who can accept or reject the testimony in whole or in part).
The Commonwealth proved beyond a reasonable doubt that the defendant possessed the bag and knew the drugs were inside it. Accordingly, we affirm the conviction.

Affirmed.