COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Clements and Felton
Argued at Chesapeake, Virginia


LORRIE A. LUTES

MEMORANDUM OPINION[*] BY
v.       Record No. 1302-05-1          JUDGE JEAN HARRISON CLEMENTS
MARCH 28, 2006

VIRGINIA BEACH DEPARTMENT
 OF HUMAN SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Edward W. Hanson, Jr., Judge[1]

B. Cullen Gibson for appellant.

Nianza E.Wallace II, Associate City Attorney (Leslie L. Lilley, City
Attorney; Mark D. Stiles, Deputy City Attorney, on brief), for
appellee.

No brief or argument by Howard E. Copeland, Guardian *ad litem*
for the infant child.[2]


Lorrie A. Lutes (mother) appeals from a decision of the trial court terminating her residual

parental rights to her minor son, R.H.  On appeal, mother contends that the trial court erred in


---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] With the exception of the final order entered on August 1, 2005, from which this appeal
was officially taken, the Honorable A. Joseph Canada, Jr., presided over the proceedings
addressed in this opinion.

[2] The record reflects that the guardian *ad litem* for the infant child was provided notice
pursuant to Rule 5A:6.  He did not file a responsive brief with this Court, nor join with any other
party as provided in Rule 5A:19.  "Standard J. of the *Standards to Govern the Performance of
Guardians Ad Litem for Children*, effective September 1, 2003 calls for all guardians *ad litem* to
'file appropriate . . . briefs[] and appeals on behalf of the child and ensure that the child is
represented by a [guardian *ad litem*] in any appeal involving the case.'"  Brown v. Spotsylvania
Dep't of Soc. Servs., 43 Va. App. 205, 209 n.1, 597 S.E.2d 214, 216 n.1 (2004).

finding, by clear and convincing evidence, that her parental rights should be terminated. Finding no error, we affirm.

As the parties are fully conversant with the record in this case, and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

BACKGROUND

We view the evidence in the "light most favorable" to the prevailing party in the trial court and grant to that party the benefit of "all reasonable inferences fairly deducible therefrom." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). "[T]he trial judge's 'determination is considered to have settled all conflicts in the evidence in favor of the prevailing party.'" Richmond Dep't of Soc. Servs. v. Crawley, 47 Va. App. 572, 580, 625 S.E.2d 670, 674 (2006) (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 796 (1990)). "Where the record contains credible evidence in support of the findings made by [the trial] court, we may not retry the facts or substitute our view of the facts." Ferguson v. Stafford County Dep't of Social Services, 14 Va. App. 333, 336, 417 S.E.2d 1, 4 (1992).

So viewed, the evidence proved that R.H., who was born on May 23, 1993, entered foster care on July 22, 2003. Mother's boyfriend had struck mother and R.H., and a Foster Care Service Plan prepared by the Virginia Beach Department of Social Services (VBDSS) (Virginia Beach Department of Human Services, VBDHS, was formerly known as VBDSS) on September 8, 2003, stated that foster care resulted from concerns about the child's safety as well as from mother's failure to provide "food, shelter or any resources." The Program Goal indicated in the September 8 service plan was a return to living with the mother. The September 8 service plan detailed several steps mother should take in order for R.H. to be returned to her care, including the retention of

stable employment and adequate housing, the completion of parenting and domestic violence classes, and mother's participation in counseling with appropriate therapists.

In the year that followed, and indeed until the time of the trial court hearing, mother did not obtain adequate housing and failed to maintain stable employment. Moreover, in the nearly two years since R.H. entered foster care, mother completed neither parenting nor domestic violence classes. And although she became generally more "compliant" with her treatment for depression, she did not consistently attend therapy. Her depression improved somewhat, but remained unresolved.

During the same time period clinical social worker Lois Swersky was R.H.'s sole therapist. She treated him twenty-three times between July 31, 2003, and June 10, 2004, for problems including Post-Traumatic Stress Disorder (PTSD) arising from his maltreatment at the hands of men mother had brought into his life. Under his foster parents' care the condition had greatly improved, and on June 14, 2004, Swersky responded to a VBDHS request with a recommendation of permanent foster care, an arrangement that would nevertheless allow mother to visit with R.H. The recommendation was conditioned on mother's willingness to be supportive of the arrangement. However, although fully participating in visitation with R.H., mother was often disruptive during visits, attempting at times to undermine the authority of the foster family and their relationship with R.H. Swersky later acknowledged that mother's behavior in visitation left R.H. emotionally conflicted, and created problems she was obligated to address therapeutically.

On June 24, 2004, VBDHS filed a second service plan, indicating that the program goal had changed to adoption. The juvenile and domestic relations district court heard argument on the termination of mother's residual parental rights on December 21, 2004, and entered a termination order on December 29. Mother challenged the order on *de novo* appeal to the trial court, and an *ore tenus* hearing was held on May 3, 2005.

Swersky testified that in the two years prior to the trial court hearing she was the only therapist to treat R.H., seeing him more than fifty times. She gave her expert opinion that visitation with the mother—whether supervised or otherwise—would not be in R.H.'s best interests as contact with the mother would undermine the progress R.H. had made and would continue to make in the care of the foster family. The guardian *ad litem*—who had twice met with R.H. in the foster parents' home and reported that R.H. wished to live with his mother—"leaned toward" the opinion that parental rights should not be terminated.

The trial court found the evidence clear and convincing that mother had failed to remedy the major conditions that had led to R.H.'s foster care, relative particularly to stable housing, adequate income, and the avoidance of domestic violence. It also found that continued visitation would be harmful to R.H.'s emotional state and that termination of mother's parental rights was therefore in his best interests.

On August 1, 2005, the court entered an order terminating mother's parental rights. This appeal followed.

## ANALYSIS

To terminate parental rights under Code § 16.1-283(C)(2), the trial court must find by clear and convincing evidence that termination is in the best interests of the child and that mother failed to remedy substantially the conditions leading to or requiring continuation of foster care despite receiving reasonable and appropriate services. Mother does not challenge the finding that she failed to remedy the conditions necessitating foster care, arguing solely that VBDHS failed to demonstrate by clear and convincing evidence that the termination of mother's parental rights was in the child's best interests. Mother points to the testimony of her mental health professionals that she had improved in some respects since July of 2003 and to the fact that the child is doing well in foster care to argue that the trial court drew the wrong conclusion from the evidence. She contends that

such facts militate not to the severance of her parental rights, but to the maintenance of the status quo. We disagree.

As we have already noted, the inferences to be drawn from proven facts are matters reserved solely to the fact finder. See Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999). Moreover, the "[t]ermination of residual parental rights is a grave, drastic, and irreversible action," Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), and we presume the trial court "'to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests,'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley, 9 Va. App. at 329, 387 S.E.2d at 796). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

It cannot be said that the factual inferences drawn by the trial court were plainly wrong. The evidence showed that mother had obtained neither stable housing nor adequate employment in the nearly two years since her child had entered foster care. While R.H. was in her care mother had exposed him to domestic abuse, yet since June of 2003 she had not completed parenting classes, attended a domestic violence program, or taken any tangible step that might suggest to the fact finder that she would not expose R.H. to such risk in the future. Further, mother had participated in therapy inconsistently, and her depression remained unresolved. R.H., on the other hand, was thriving under the care of his foster parents, even moving toward recovery from the lingering effects of his time spent in mother's care. Citing his improvement and the detrimental effect mother's behavior had on his emotional state, R.H.'s therapist—the professional in the best position to draw such a conclusion—testified that visitation was not in R.H.'s best interest. The evidence therefore supports the trial court's findings that VBDHS presented clear and convincing evidence that

mother's parental rights should be terminated and that the termination of mother's parental rights was in the child's best interests.

Accordingly, we affirm the decision of the trial court.

<u>Affirmed.</u>