COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judge McClanahan and Senior Judge Coleman
Argued at Salem, Virginia


SAMUEL GOCHEZ
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1178-07-3              JUDGE ELIZABETH A. McCLANAHAN
                                                         OCTOBER 7, 2008
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF PATRICK COUNTY
                                Martin F. Clark, Jr., Judge

            James R. McGarry (Young, Haskins, Mann, Gregory, McGarry &
            Wall, P.C., on brief), for appellant.

            Virginia B. Theisen, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Samuel Gochez appeals his conviction of involuntary manslaughter.  He argues the

evidence was insufficient to support his conviction.  We affirm the trial court.

                                    I.  BACKGROUND

        On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted).

That principle requires us to "'discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences that may be drawn therefrom.'"  Kelly v. Commonwealth, 41 Va. App. 250,

254, 584 S.E.2d 444, 446 (2003) (en banc) (quoting Watkins v. Commonwealth, 26 Va. App.

335, 348, 494 S.E.2d 859, 866 (1998)).  See also Bolden v. Commonwealth, 275 Va. 144,

147-48, 654 S.E.2d 584, 586 (2008); Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

470, 473 (2006); <u>Viney v. Commonwealth</u>, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005); <u>Walton v. Commonwealth</u>, 255 Va. 422, 425-26, 497 S.E.2d 869, 871 (1998).[1]

Gochez drove his car to Ashley Martin's home and picked up Martin and Billy Jo Angel to take them to a friend's house to retrieve personal items Martin and Angel left there the previous night. After they left the Martin house, Gochez ran out of gas. Martin's mother drove by, picked them up, and took them back to the Martin house. Angel described Gochez as being in a "really ill mood" and "really aggravated" at that time. Martin's mother gave Gochez a jug of gas, and Gochez, Martin, and Angel returned to the Gochez vehicle where Gochez put the gas in his tank. Gochez, along with Martin and Angel, drove to a convenience store/gas station where Gochez purchased additional gas that he put in his car. Gochez left the convenience store spinning his tires loudly enough for a store employee inside to hear the squealing. Angel told Gochez to take them back to Martin's house because "he was in just such an ill mood [she] didn't even want to go get [their] stuff." According to Angel, they "left the store and [Gochez] was mad." As they headed south back to the Martin house, Gochez was driving seventy to seventy-five miles per hour on the winding two-lane road with a posted speed limit of fifty-five miles per hour. Along that route, a sign was posted showing a maximum safe speed of thirty-five miles per hour indicating several curves ahead in the road. There were additional "chevron" signs posted along the route indicating the road made a significant right hand turn.

As Gochez was driving south to Martin's home, Anthony Trent was driving a rescue squad vehicle in the northbound lane. Trent and his passenger, Lester Harrell, had just come through a curve in the road and crossed a bridge as they topped a knoll where Gochez drove

---

[1] Gochez contended at oral argument the trial court's "personal experience [with the road] colored his hearing of the evidence." Gochez did not make this argument in his brief and did not object to the trial court's questioning of the witnesses regarding the location in the road where the accident occurred. Therefore we do not consider this argument on appeal. <u>See</u> Rules 5A:20(e) and 5A:18.

across the center line about two feet and ran them off the road. Gochez then "jerked" his vehicle back into his own lane. Kenneth Charles Marshall was also driving his vehicle in the northbound lane and met Gochez as Gochez was coming around a curve after having run the rescue squad vehicle off the road. Gochez began to slide sideways causing Marshall to hit his brakes as Gochez slid toward Marshall. Gochez then ran off the road to the right, attempted to "jerk it back on the road," ran up onto a bank on the right, flipped several times over and down the embankment, finally hitting and knocking off a portion of a bridge.

The accident took place approximately one-half mile from the convenience store. No one in the Gochez vehicle was wearing a seat belt at the time of the accident, and all three occupants were ejected from the vehicle. Gochez and Angel suffered serious injuries, and Martin was killed. The trial court convicted Gochez of involuntary manslaughter and reckless driving.[2]

## II. ANALYSIS

On appeal, Gochez contends the evidence was insufficient to support his conviction because his conduct did not exhibit a conscious disregard of human life.

In reviewing the sufficiency of the evidence, "the judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict." Saunders v. Commonwealth, 242 Va. 107, 113, 406 S.E.2d 39, 42 (1991). "The trial court's judgment will not be set aside unless plainly wrong or without evidence to support it." Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999). "The credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Marable v. Commonwealth, 27 Va. App. 505, 509, 500 S.E.2d 233, 235 (1998). "This Court does not substitute its judgment for that of the trier of fact." Hunley v. Commonwealth, 30 Va. App. at 559, 518 S.E.2d at 349 (citing Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220

---

[2] Gochez only challenges the manslaughter conviction.

(1992)).  The only relevant inquiry is "whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Haskins v. Commonwealth, 44 Va. App. 1, 7, 602 S.E.2d 402, 405 (2004) (citation and footnote omitted); Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*).

Involuntary manslaughter in the operation of a motor vehicle is an "'accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life.'"  Greenway v. Commonwealth, 254 Va. 147, 154, 487 S.E.2d 224, 228 (1997) (quoting King v. Commonwealth, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977)).  A "violation of the statutes defining reckless driving and prescribing motor vehicle traffic regulations is insufficient" to constitute manslaughter "unless it is so flagrant, culpable, and wanton as to show utter disregard of the safety of others under circumstances likely to cause injury."  King, 217 Va. at 605-06, 231 S.E.2d at 316.

> What distinguishes a speeding violation from the misdemeanor of reckless driving, and the misdemeanor from the felony of involuntary manslaughter, is the likelihood of injury to other users of the highways.  And the degree of the hazard posed by a speeding automobile depends upon the circumstances in each case.

Mayo v. Commonwealth, 218 Va. 644, 648, 238 S.E.2d 831, 833 (1977).  In analyzing the level of disregard to others, we must consider the cumulative effect of the defendant's negligent acts.

> In determining whether or not one is guilty of gross and culpable negligence, it is important to consider the cumulative effect of a series of connected, or independent negligent acts, out of which arise the injuries, as showing the attitude of the offender.  All of the immediate acts and actions of the offender presenting a causal relation to the injury and a part of the *res gestae* are pertinent to the inquiry.  A disregard of all, or of several simple and primary rules of conduct prescribed by law for the benefit of society becomes the more aggravated as the disregard increases in extent.

Bell v. Commonwealth, 170 Va. 597, 609, 195 S.E. 675, 680 (1938).

- 4 -

The record supports the trial court's judgment. Gochez left the convenience store spinning his tires in an angry state of mind as evidenced by witness testimony. His ill mood influenced his conduct as he drove fifteen to twenty miles per hour over the speed limit and thirty-five to forty miles per hour over the posted maximum safe speed on a narrow and curvy two-lane road in the face of warning signs indicating the approaching turns. Gochez continued driving in this reckless manner despite the posted warning signs and even after running another vehicle off the road – hardly "keeping a proper lookout" as he contends in his "question presented."[3] Instead of heeding these warnings, Gochez continued on in this manner without decreasing his speed, thus increasing the likelihood of injury to others using the roadway and his own passengers.[4] All of these actions caused Gochez to lose control of his vehicle resulting in the accident and death of Martin.[5] Viewed in the context of these circumstances, the evidence

---

[3] The "question presented" states:

> Did the Trial Court err in not granting the Appellant's Motion to Strike and in finding the Appellant guilty of Involuntary Manslaughter when the Commonwealth's evidence showed that the Appellant, although exceeding the speed limit, was keeping a proper lookout, corrected his steering when faced with an oncoming hazard, and actively tried to avoid the crash that killed the decedent, so that the cumulative effect of his actions did not amount to a conscious disregard for human life?

[4] Though Gochez contends he was "actively trying to avoid the crash" in bringing his vehicle back into his lane after running the rescue squad vehicle off of the road, this argument ignores his own culpability in bringing about the chain of events that resulted in the accident. As the trial court aptly noted, after losing control of a vehicle, there is probably not a "single case where people just throw up their hands and say, 'I'm just gonna let it go,'" without trying to gain back control of the vehicle.

[5] Gochez claims the trial court did not correctly recollect the evidence when it stated the "chevron" signs were posted at a location after the point at which Gochez ran the rescue vehicle off of the road. The location of the signs – whether before or after the near miss with the rescue vehicle – does not affect our analysis. Gochez also contends the trial court did not correctly recollect the evidence when it found the near miss with the rescue squad vehicle occurred in a "straight stretch" rather than a curve. Harrell testified Gochez ran him and Trent off the road as they topped a knoll in the road at which point there is a straight stretch before entering the curve

supports the conclusion that Gochez "showed a reckless disregard for human life constituting criminal negligence sufficient to support the conviction[] for involuntary manslaughter." Greenway, 254 Va. at 155, 487 S.E.2d at 229. [6]

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

---

at the bridge. Thus, the trial court's finding in this regard is supported by witness testimony. Nevertheless, the contour of the road at this precise location also has no bearing on our analysis.

[6] Gochez argues his conduct does not constitute a "persistent" course of conduct necessary to show the level of criminal negligence needed to support an involuntary manslaughter conviction because the accident occurred only one-half mile from the convenience store. But the Supreme Court of Virginia has not limited criminal negligence to cases involving conduct taking place over a specified period of time or distance. To the contrary, the Court has found the existence of criminal negligence when a defendant has engaged in a single negligent act showing a reckless disregard of life. See, e.g., Cable v. Commonwealth, 243 Va. 236, 415 S.E.2d 218 (1992); Fadely v. Commonwealth, 208 Va. 198, 156 S.E.2d 773 (1967); Richardson v. Commonwealth, 192 Va. 55, 63 S.E.2d 731 (1951).