COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and White
Argued at Salem, Virginia

PETER JAEGER DILLON, S/K/A
  PETER JAEGAR DILLON

v.      Record No. 1299-21-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE KIMBERLEY S. WHITE
JANUARY 10, 2023

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

Steven D. McFadgen Sr. (McFadgen Law, PLC, on brief), for
appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General; Lauren C. Campbell, Assistant Attorney General,
on brief), for appellee.

Peter Jaeger Dillon appeals his conviction, following a jury trial, of possession of cocaine, in

violation of Code § 18.2-250. Dillon asserts that the Pittsylvania County Circuit Court erred in

refusing jury instructions that were accurate statements of law and denying his motion to strike. For

the following reasons, we disagree and affirm the conviction.

BACKGROUND

On appeal, "we review the evidence in the light most favorable to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (*en banc*) (citation omitted). That

principle requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (*en banc*) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

Peter Dillon requested, several times, to meet with Melvin Davis, the warden at Green Rock Correctional Center, to discuss drug activity at Green Rock. Davis, eventually, met with Dillon, who informed him of the significant amount of narcotics smuggled into the prison. Dillon indicated that he wanted a transfer to Bland Correctional Center and dismissal of a pending institutional charge for simple assault in exchange for sharing information on the drug activity at Green Rock. Davis made clear that he could not promise anything, however, Dillon was free to share any information he could. Davis never asked Dillon to bring him contraband. At trial, Davis explained that he did not have "the authority to tell an inmate that they could possess contraband and grant them immunity in the community for . . . a criminal charge." Particularly, he noted that it was a safety concern for inmates to investigate drug crimes within the prison.

On January 30, 2019, Davis received a handwritten letter from Dillon via institutional mail. Institutional mail is sent and received within the facility. When Davis opened Dillon's envelope, two small pieces of folded notebook paper were taped to the top right and left corners of the letter. One packet was labeled cocaine, the other was labeled methamphetamine/molly with an arrow pointing to the corresponding packet.

Davis referred the investigation of the letter allegedly containing narcotics to Department of Corrections Master Special Agent Craig O'Der. On February 4, 2019, Agent O'Der recorded an interview with Dillon, played for the jury, where Dillon admitted to sending the letter with the narcotics to Davis. Dillon believed that he and Davis agreed to dismiss the institutional charge and transfer Dillon to Bland Correctional Center if he helped Davis eradicate drugs in the prison. Dillon admitted that Davis requested all communications be sent to him directly but that Davis had never requested contraband.

Additionally, Department of Forensic Science controlled substance analyst Ashton Lesiak testified as an expert in the testing of narcotics. She prepared the certificate of analysis for the letter and two smaller packages contained therein. Lesiak tested each item separately and concluded packet 1A was not methamphetamine but packet 1B was cocaine.

Upon the conclusion of the Commonwealth's evidence, Dillon moved to strike arguing that the Commonwealth had not shown he intended to commit a crime. The trial court overruled the motion.

Dillon then testified in his own defense. On January 30, 2019, Dillon returned to his cell from the shower and was told by another inmate to "look in [his] red box." Dillon turned, investigated the box, and saw a wadded-up piece of pink paper on the floor of the red box. Entering his cell, Dillon picked up the paper and discovered that it contained narcotics. Dillon stated that he immediately refolded the wad, grabbed a piece of paper, and wrote and sent the sealed letter to Davis. After Dillon rested his case, he renewed his motion to strike. The trial court denied the motion.

Thereafter, Dillon sought to instruct the jury as follows:

> B. Felonious is a technical word of law which means done with intent to commit [a] crime; of the grade or quality of a felony.
>
> C. Felonious Intent is intent to commit an actus reus without any justification, excuse, or other defense.
>
> D. Actus Reus is the wrongful deed that comprises the physical components of a crime and that generally must be coupled with mens rea to establish criminal liability.
>
> E. Mens Rea [is] the state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime.

The trial court noted that Dillon did not object to the first nine jury instructions or to their order. The trial court then rejected Dillon's Instructions A,[1] B, C, D, and E. It found that although the instructions were accurate definitions from the fourth edition of Black's Law Dictionary, "using Latin words and others can be confusing to a jury, and [the definition of intent is] not as specific" as the definition of intent in Instruction 9. The trial court further noted that the Commonwealth did not have to prove that this crime was a felony, rather, the term felony put Dillon on notice that he was being charged with a felony. Additionally, it noted that the elements the Commonwealth must prove were set forth in Instruction 8, which the court noted was a model jury instruction. Finally, the court refused the proffered jury instructions because they would be confusing to the jury and chose, instead, to use the model instruction.

In closing, Dillon argued that the evidence failed to prove he had the requisite intent to possess cocaine because he never asked for drugs and did not know the drugs were cocaine and methamphetamine when he sent them to Davis. Therefore, he argued, no crime had been committed. The jury convicted Dillon of possession of cocaine, and the trial court sentenced him to eight years of incarceration, with seven years and six months suspended. This appeal followed.

ANALYSIS

I. The Refused Jury Instructions

First, Dillon argues that the trial court erred by "denying jury instructions that were accurate statements of the law." He notes that they are accurate statements of the law, would have developed issues left unaddressed by the accepted instructions, and that they were vital to his defense and supported by more than a scintilla of evidence. Therefore, he concludes that the trial court abused its discretion by rejecting them. We disagree.

---

[1] The trial court found that Dillon's Instruction A was duplicative of the Model Jury Instruction 2.100 the court used as Instruction 1.

This Court

> review[s] jury instructions to see that the law has been clearly
> stated and that the instructions cover all issues which the evidence
> fairly raises. This is a mixed question of law and fact. It is error to
> give an instruction that incorrectly states the law; whether a jury
> instruction accurately states the relevant law is a question of law
> we review de novo. However, jury instructions are proper only if
> supported by the evidence, and more than a scintilla of evidence is
> required. When reviewing a trial court's refusal to give a proffered
> jury instruction, we view the evidence in the light most favorable
> to the proponent of the instruction.

*Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (alteration in original) (quoting *Payne v.*

*Commonwealth*, 292 Va. 855, 869 (2016)).

"Nevertheless, a court may exercise its discretion and properly exclude an instruction that

both correctly states the law and is supported by the evidence when other granted instructions

fully and fairly cover the relevant principle of law." *Id.* (quoting *Payne*, 292 Va. at 869). In

addition, "[n]o instruction should be given that . . . would be confusing or misleading to the

jury." *Schmuhl v. Commonwealth*, 69 Va. App. 281, 311 (2018), *aff'd*, 298 Va. 131 (2019).

We begin our review by determining whether the jury instructions given accurately

represent the relevant law. *See Watson*, 298 Va. at 207. "It is unlawful for any person

knowingly or intentionally to possess a controlled substance." Code § 18.2-250. "In order to

convict a person of illegal drug possession, the Commonwealth must prove beyond a reasonable

doubt that the accused was aware of the presence and character of the drug and that the accused

consciously possessed it." *Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020). "[P]roof of

actual possession is not required; proof of constructive possession will suffice." *Id.* (quoting

*Walton v. Commonwealth*, 255 Va. 422, 426 (1998)). Constructive possession can be shown by

"acts, statements, or conduct of the accused or other facts or circumstances which tend to show

that [he] was aware of both the presence and character of the substance and that it was subject to

his dominion and control." *Bagley v. Commonwealth*, 73 Va. App. 1, 27 (2021) (alteration in original) (quoting *Wilson v. Commonwealth*, 272 Va. 19, 27 (2006)).

The trial court gave the following instructions regarding Dillon's possession charge:

> 8. The defendant is charged with the crime of possessing Cocaine which is a Schedule II controlled substance. The Commonwealth must prove beyond a reasonable doubt that the defendant knowingly and intentionally possessed Cocaine. If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt the crime as charged, then you shall find the defendant guilty. If you find that the Commonwealth has failed to prove beyond a reasonable doubt that the defendant possessed Cocaine, then you shall find the defendant not guilty.

> 9. To knowingly and intentionally possess a controlled substance means that a person is aware of the presence and character of the substance and has actual physical possession or constructive possession. Actual physical possession means that the substance is found on the person. Constructive possession means that the person has dominion and control over the substance. Possession need not be exclusive; it may be shared with another. The length of time of the possession is not material. Possession may be proved by acts, declarations or conduct of the defendant from which it may be fairly inferred that he was aware of the presence and character of the substance at the place found.

We find that these instructions fully and fairly cover the relevant principles of law therefore rendering additional, repetitious instructions unnecessary and within the sound discretion of the trial court to refuse. *See Watson*, 298 Va. at 207. Furthermore, the trial court did not abuse its discretion when it refused Dillon's additional instructions as confusing to the jury; the elements and burden of proof were succinctly articulated in the model instructions used by the court and the Latin superfluous to understanding the relevant law. *See Schmuhl*, 69 Va. App. at 311. Therefore, we conclude that the trial court did not abuse its discretion in refusing Dillon's proffered instructions.

## II. The Sufficiency of the Evidence

Next, Dillon asserts that the evidence failed to prove he had the intent to possess the cocaine. In support, Dillon notes that: 1) another inmate directed him to collect the contraband and that he never intended to commit a crime; 2) he immediately sent the contraband to Davis rather than keep it; and 3) his improper identification of one of the narcotics. We disagree and find the evidence sufficient to convict Dillon.

When reviewing the sufficiency of the evidence, the trial court's judgment "is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "[T]he relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

"[T]he Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and . . . consciously possessed it." *Yerling*, 71 Va. App. at 532. "[C]onstructive possession will suffice." *Id.* "The duration of the possession is immaterial." *Hunley v. Commonwealth*, 30 Va. App. 556, 562 (1999). The Commonwealth may prove constructive possession by "acts, statements, or conduct of the accused or other facts or circumstances which tend to show that [he] was aware of both the presence and character of the substance and that it was subject to his dominion and control." *Bagley*, 73 Va. App. at 27.

Here, there was ample evidence to support Dillon's conviction for possession of cocaine. First, Dillon's own statements, both to Agent O'Der and testifying to the court, establish that he had consciously possessed the narcotics and was aware of the presence and character of the substances. He described finding the narcotics in his "red box." He described taking the narcotics and placing them into an envelope, after packaging and labeling them as either

methamphetamine or cocaine, to be mailed to Davis accompanied by a letter indicating his knowledge about the substances. Furthermore, Dillon's own admissions are corroborated by the testimony of other witnesses. As such, we find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt and affirm the trial court.

## CONCLUSION

The trial court's refusal of Dillon's proffered instructions was not an abuse of discretion. Additionally, the trial court's denial of the motion to strike was not plainly wrong or without evidence to support it because a reasonable fact finder could conclude that Dillon possessed cocaine, in violation of Code § 18.2-250. Accordingly, we affirm the conviction.

*Affirmed*.