COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Callins and Senior Judge Clements
Argued by videoconference


CHRISTOPHER DEVON KIRBY

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0122-23-2              JUDGE DOMINIQUE A. CALLINS
                                                    OCTOBER 22, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CAROLINE COUNTY
Sarah L. Deneke, Judge

Robert J. Wagner (Maureen L. White, on brief), for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


        Christopher Devon Kirby appeals his conviction, following a jury trial, for possession of a

firearm by a convicted felon, in violation of Code § 18.2-308.2.  On appeal, Kirby argues that the

trial court erred when it failed to strike a prospective juror for cause and when it refused to give his

proposed jury instructions clarifying the terms "knowingly" and "intentionally" in the context of

firearm possession.  He further argues that the evidence was insufficient to support his conviction.

For the reasons that follow, we affirm the judgment of the trial court.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

I. Voir Dire

During the voir dire, Kirby's counsel asked the venire, "does anyone here feel that the testimony of a law-enforcement officer is necessarily more credible than the testimony of a nonlaw-enforcement officer?" Counsel later clarified his question, "In other words, would you believe a law-enforcement officer more readily than you would a nonlaw-enforcement officer?" Jurors 14 and 17 answered in the affirmative. When asked why, Juror 14 indicated that "law enforcement is trained to observe things differently and have a different perspective than an ordinary person off the street." When asked if law enforcement sometimes "have certain biases," Juror 14 stated, "[i]t's always possible." In addition, when discussing the impact that a juvenile felony conviction has on an individual's ability to lawfully possess a firearm as an adult, Juror 14 stated, "I believe that everybody should receive a second chance." He explained, "If someone was a young kid and does something stupid, I mean, that shouldn't cloud the rest of his life."

At the close of voir dire, the parties and the court discussed striking jurors for cause. The Commonwealth indicated that Juror 14 could be struck due to his statements about gun possession, but the prosecutor then left that decision to the trial court. Kirby's counsel noted, among other things, that Juror 14 had stated "he believed law enforcement more . . . and was never rehabilitated." The trial court recognized that Juror 14 had "some different opinions" than other jurors and noted that Juror 14 stated he was "more likely to believe a police officer." The court, however, did not

---

[1] On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

"believe that that [statement was] sufficient to strike [Juror 14] for cause without the proper follow-up" and denied Kirby's motion to strike Juror 14.

After voir dire, the trial court explained to the venire that "we're going to start into the next step of this process, which is the peremptory strikes." The court continued that "in an effort to save some time" it would first "go ahead and give . . . the preliminary instructions in this case, the instructions of law in the event that you are selected as a juror in this case." After the trial court had provided the instructions, Kirby's counsel raised a *Batson*[2] challenge. In response, the court remarked, "You haven't seen the jury yet." Kirby's counsel replied, "I've seen who they struck. I don't want my challenge to be too belated. I need to put it on the record." The trial court then proceeded to observe that it had not "seen the jury yet," and queried, "How can I rule on a *Batson* Motion when I haven't seen them[?]" (Italics added). To this, Kirby's counsel responded, "Okay."

Following this exchange, the trial court addressed the prospective jurors, instructing, "If the clerk calls your number, have a seat in the jury box." The clerk called Juror 2, Juror 4, Juror 7, Juror 11, Juror 21, Juror 23, Juror 24, Juror 27, Juror 29, Juror 30, Juror 31, and Juror 33. After both the Commonwealth and Kirby's counsel confirmed that the jury, as constituted, was "satisfactory," Kirby's counsel noted that there were only 11 jurors. It was later discovered that there was "no [Juror 21]." Kirby's counsel then requested that Juror 38 be added to the jury, to which the Commonwealth responded, "Fine." After Juror 38 was seated, both the Commonwealth and Kirby's counsel again confirmed that the jury was "satisfactory." Notwithstanding Kirby's *Batson* challenge, the trial transcript contains no record of either party's peremptory strikes. Nor does the trial transcript clearly signal whether such strikes occurred.

---

[2] In *Batson v. Kentucky*, 476 U.S. 79 (1986), "the United States Supreme Court held . . . the peremptory exclusion of a potential juror based solely on the juror's race 'is purposeful discrimination and a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.'" *Hopkins v. Commonwealth*, 53 Va. App. 394, 397-98 (2009) (quoting *Jackson v. Commonwealth*, 266 Va. 423, 435 (2003)).

## II. Evidence at Trial

At trial, the evidence established that in the early morning of June 22, 2021, Sheriff's Deputy Jason Church was patrolling Pendleton subdivision in Caroline County. While stopped at the intersection of Pendleton Drive and Route 1, Deputy Church noticed that the driver of the adjacent vehicle, later identified as Kirby, "was slumped over in the driver's seat." Concerned, Deputy Church pulled behind the vehicle and activated his lights.

It was "fairly dark" at the intersection where the traffic stop occurred, and Deputy Church approached Kirby with his flashlight. When Deputy Church looked into the vehicle's interior, he observed a small black pistol on the front passenger seat.[3] Deputy Church requested back-up. After Deputy Church had awakened Kirby, he asked Kirby if he was having a "medical issue" and requested that Kirby exit the vehicle. Deputy Church testified that he asked Kirby to exit the vehicle for safety reasons as the firearm was "rather close" to Kirby. When Kirby exited the vehicle, the interior lights illuminated the cab.[4] Kirby told Deputy Church that he was traveling to Richmond to pick up his daughter.

Upon searching the vehicle, Deputy Church found a second firearm, which was mostly black with a blue handle, and a small bag of pills in plain view in the center console. When asked about the firearms, Kirby denied ownership and stated that they belonged to his fiancée, Kenya Richardson. When asked about the pills, Kirby indicated that they belonged to a friend and that he was returning them. After learning that Kirby was a convicted violent felon, Deputy Church arrested Kirby.

---

[3] The parties stipulated that the found pistol met the statutory definition of a firearm.

[4] Deputy Church acknowledged, on cross, that the report he compiled did not "mention that the light inside the vehicle came on."

Richardson testified she and Kirby lived together in Pendleton subdivision with their children. Although there are some streetlights in their subdivision, Richardson acknowledged that they do not illuminate the whole street. Additionally, there are no streetlights in front of the couple's home, thus the area is dark at night. In 2021, she and Kirby had three vehicles: a Trail Blazer, a BMW, and a Chrysler. Kirby usually drove the Trail Blazer or the BMW while Richardson drove the Chrysler. The Chrysler's interior is black, and sometimes the interior light did not work. When asked if she remembered if the vehicle's interior light was working at the time, she responded, "It's not now, so, no, I'm going to say it wasn't." She acknowledged, however, that she could not "remember for sure."

In May 2021, Richardson purchased a firearm for her safety. She usually stored the firearm in a lockbox in the Chrysler's trunk or in the vehicle's center console. Richardson explained that she kept both firearms locked in the Chrysler's trunk "ninety percent of the time" because Kirby was a felon and prohibited from possessing firearms. Richardson admitted that Kirby was aware that she kept the firearms in the Chrysler. On the evening when Deputy Church found Kirby in the Chrysler, the Trail Blazer was "in the shop" and Kirby's BMW was inoperable.

On June 21, 2021, Richardson and one of her sons were sick. Kirby left for work at 5:00 a.m. and did not return home until approximately 10:30 p.m. Sometime in the evening before Kirby returned home, Richardson drove her Chrysler to a nearby gas station to obtain medicine. Richardson shopped with both of her firearms on her person. When she re-entered her vehicle, she removed her gun belt so that she could buckle her seat belt. She placed a firearm on the front passenger seat. When Richardson arrived home, she inadvertently left her firearm on the front seat. When Kirby returned from work, he told Richardson that he was going to Richmond to pick up his daughter.

Early the next morning, Richardson received a call from the police. They informed Richardson that Kirby had been "stopped in the vehicle that was [Richardson's] and that there were two weapons found in the vehicle." Because Kirby's BMW was inoperable, Richardson walked to the intersection. Upon her arrival at the scene, Richardson told the officers that she owned the found firearms but, at trial, stated that she did not "know anything about the pills" found in the Chrysler's center console.

### III. Jury Instructions

At the close of all the evidence, the trial court reviewed jury instructions with the parties. Kirby proffered instructions defining the terms "knowingly" and "intentionally" in the context of possessing a firearm. The instructions stated, "[a]n act that is done knowingly is not an act that is done because of mistake or accident, or other innocent reason" and "[a]n act that is done intentionally is an act that is done purposely and deliberately and not accidentally." Kirby argued that the proffered instructions were "a correct statement of the law" and that he mistakenly came upon the gun. He asserted that accidentally possessing a firearm, as he claims he did, does not constitute knowing and intentional possession.

The trial court determined, among other things, that the agreed upon instructions sufficiently covered the issue and denied Kirby's proffered instructions. The jury convicted Kirby of possession of a firearm by a convicted felon, and the trial court sentenced him to five years of incarceration, the mandatory minimum sentence. Kirby appeals.

### ANALYSIS

### I. Motion to Strike Juror for Cause

Kirby argues that the trial court abused its discretion by not striking Juror 14 for cause because that juror agreed with the proposition that "the testimony of a law-enforcement officer is necessarily more credible than the testimony of a nonlaw-enforcement officer," thereby signaling

that he would "believe a law-enforcement officer more readily than . . . a nonlaw-enforcement officer." When questioned by Kirby's counsel, Juror 14 answered "No" when asked if the belief was borne of personal experience. Juror 14 explained his belief that, by virtue of training, a law enforcement officer would "observe things differently" and would "have a different perspective than an ordinary person off the street." In response, Kirby's counsel asked, "do you feel . . . that sometimes law enforcement have certain biases?" Juror 14 responded, "It's always possible."

Kirby contends that the juror's "skepticism that a police officer might be biased . . . jumps from the page in his last response" and that "[n]o one attempted to rehabilitate the juror" or "to ascertain whether this juror could put aside his belief." Kirby concludes that "it is impossible to know whether the juror could have, or did actually, follow the instructions regarding the credibility of witnesses and the presumption of innocence," and thus, that "the trial court's failure to strike [J]uror 14 constituted reversable error."

But we need not determine whether the trial court abused its discretion in the manner Kirby asserts because the record before us is not sufficient as to permit evaluation of Kirby's claims. It is well-established that "[i]t is prejudicial error for the trial court to force a defendant to use peremptory strikes to exclude a venireman from the jury panel if that person is not free from exception." *Townsend v. Commonwealth*, 270 Va. 325, 329 (2005). Although Juror 14 was not among the prospective jurors selected to sit on the jury, the record Kirby presents for appellate review offers no inkling regarding whether Kirby used a peremptory strike to exclude Juror 14.[5] Indeed, the record provides no insight into how peremptory strikes were or were not used, or whether peremptory strikes were used *at all*. In the absence of this information, it is

---

[5] In supplementary briefing, Kirby's counsel acknowledges that "there was no indication that [Juror] 14 was struck pursuant to a peremptory challenge" and "[i]t was unclear from the record which jurors were struck pursuant to peremptory challenges." Further, Kirby's counsel argues "that based on the uncertainty in the record, the Court cannot find that the issue with regard to the 'for cause' challenge to Juror No. 14 is moot; the record on the matter is unclear."

impossible for us to say that the trial court's denial of Kirby's motion to strike Juror 14 for cause resulted in prejudicial error.

Accordingly, Kirby has failed to meet his burden in presenting a record from which we may determine whether the trial court erred. Consequently, the trial court's judgment will be affirmed. *See Green v. Commonwealth*, 65 Va. App. 524, 534 (2015) ("[O]n appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of. If the appellant fails to do this, the judgment will be affirmed." (alteration in original) (quoting *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993))).

## II. Jury Instructions

Kirby also argues that the trial court erred by not permitting his proposed jury instruction "[w]hich [d]efined and[/]or clarified the [m]eaning of '[k]nowingly and [i]ntentionally.'" Kirby contends that his "theory of the case was that he was tired and did not realize that the gun was in the car" until Deputy Church pointed it out to him, and avers that "[t]he defense argued that Kirby possessed the firearm by happenstance" since "the guns . . . were usually concealed in the trunk of the car." Hence, Kirby argues, "it is the defense['s] position that [he] never intended to possess th[e] gun, it was an accident."

Kirby does not reference or discuss the text of either proposed instruction on brief.[6] Instead, he argues that a clarifying instruction was needed because Instruction 8, on the knowing and intentional possession of a firearm, required jurors who believed that he was unaware of the firearm to nevertheless convict him. He concludes that Instruction 8 strongly suggested to the jurors that knowingly and intentionally possessing a firearm "is a strict liability crime" whereby

---

[6] Kirby's counsel did, however, address the text of the proposed instructions during oral argument.

Kirby would have been in constructive possession of the firearm when he sat in a dark car, notwithstanding having been oblivious to the firearm's presence until it was pointed out to him. Thus, Kirby claims his proffered instructions were necessary to clarify the meaning of knowingly and intentionally and to explain that the "intentional" element of possession is not met when a person is unaware, until it is pointed out to them, of the existence of the very thing of which they are supposed to be in possession.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Chapman v. Commonwealth*, 56 Va. App. 725, 735 (2010) (quoting *Chibikom v. Commonwealth*, 54 Va. App. 422, 425 (2009)). "It is elementary that a jury must be informed as to the essential elements of the offense; a correct statement of the law is one of the 'essentials of a fair trial.'" *Id.* (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). It follows, then, that "[w]hen granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) (quoting *Daniels v. Commonwealth*, 275 Va. 460, 466 (2008)). More generally, a "trial court has broad discretion over whether to give or deny proposed jury instructions." *Chapman*, 56 Va. App. at 736.

Instruction 8 provided,

> To knowingly and intentionally possess a firearm means that a
> person is aware of the presence and character of the firearm and
> has actual physical possession or constructive possession of it.
> Constructive possession means that the person has dominion and
> control over the firearm. Mere proximity is not enough.
> Possession need not be exclusive; it may be shared with another.
> The length of time of the possession is not material. Ownership or
> occupancy of the vehicle in which a firearm is found does not
> create a presumption that the owner or occupant either knowingly
> or intentionally possessed such firearm. Such ownership or
> occupancy is a fact which may be considered with other evidence.
> Possession may be proved by acts, declarations or conduct of the

defendant from which it may be fairly inferred that he was aware
of the presence and character of the firearm at the place found.

Instruction 8 drew no objection from either side—and Kirby levels no objections regarding the instruction being an accurate statement of the law. *See, e.g.*, *Atkins v. Commonwealth*, 57 Va. App. 2, 22-23 (2010) (discussing possession of a firearm); *Rawls v. Commonwealth*, 272 Va. 334, 349-50 (2006) (same); *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008) (same); *Hunley v. Commonwealth*, 30 Va. App. 556, 562-63 (1999) (discussing possession of a controlled substance).

Accordingly, because Instruction 8 fully and fairly covered the relevant principle of law, the trial court did not err in refusing Kirby's proffered instructions. *See Hilton*, 293 Va. at 302.[7]

### III. Sufficiency of the Evidence

Kirby argues that the Commonwealth failed to "prove by [his] statements or actions that he was aware of the presence of the firearm in the car beside him prior to it being brought to his attention." In particular, Kirby points to the time of day, the lighting conditions in front of his home, that it "was dark at the intersection where he stopped," that he was sufficiently tired such that he fell asleep while in the car behind the wheel, that his eyes would have been directed

---

[7] Moreover, the fear Kirby expresses regarding conviction for the happenstance, unintentional or unknowing possession of a firearm is untethered from the actual content of Instruction 8. The instruction provides that knowing and intentional possession is conditioned on "a person['s] . . . *aware*[*ness*] of the *presence and character of the firearm* and . . . actual physical or constructive possession of it." (Emphases added). Instruction 8 notes that "[m]ere proximity" to the firearm "is not enough," and continues on to state that even "[o]wnership or occupancy of the vehicle in which a firearm is found does not create a presumption that the owner or occupant either knowingly or intentionally possessed such firearm."

Although Instruction 8 does state that "[t]he length of time of the possession is not material," this acknowledgment does not augur the outcomes Kirby envisages. Indeed, to find Kirby guilty, the jury was required to find that Kirby was aware of the presence and character of the firearm, and so was in knowing and intentional possession of it. *See Person v. Commonwealth*, 60 Va. App. 549, 555 (2012) ("As the Supreme Court of Virginia and this Court have repeatedly stated, '[a] jury is presumed to have followed the instructions of the trial court.'" (alteration in original) (quoting *Prieto v. Commonwealth*, 283 Va. 149, 169 (2012))).

forward while driving, and that "both the gun and the upholstery" on which the gun sat "were black," as salient evidence, showing that he "would not have discerned the presence of the gun." Further, Kirby claims that "[t]he Commonwealth . . . failed to point to any statements made by [him] . . . evinc[ing] knowledge of the presence of the firearm prior to [Deputy] Church bringing it to his attention," that Kirby "denied owning the gun," and that the defense's evidence "strongly suggested that the gun was left there by accident," thereby "vitiat[ing] the inference of intentional possession." Kirby also claims that "it seems to be the Commonwealth's position that mere presence constituted sufficient evidence of guilt."

As Kirby seems to acknowledge, none of these arguments were properly preserved for appellate review. Recognizing that he "failed to renew" his motion to strike "at the conclusion of all the evidence," he asks this Court to extend its holding in *Campbell v. Commonwealth*, 12 Va. App. 476 (1991) (en banc), to the present case. In *Campbell*, we held that, in a bench trial, a defendant's objections were preserved, notwithstanding his failure to renew his motion to strike at the conclusion of all of the evidence, when, during his closing argument, he challenged the sufficiency of the evidence, reprising arguments from an earlier motion to strike. *Id.* at 480-81. But, as we plainly acknowledged, this holding was limited in its scope. We explained that "in a jury trial, the closing argument is addressed *to the jury*, not the trial judge, and does not require the trial judge to rule on the evidence as a matter of law" and that, in turn, "[o]nly a motion to strike the evidence accomplishes that objective *in a jury trial*." *Id.* at 481 (emphases added). As Kirby was tried by a jury, the rule we delineated in *Campbell*, which applies only in bench trials, does not apply here. Therefore, we respectfully decline Kirby's invitation to "extend [the *Campbell*] rule to closing arguments in jury trials." *See Commonwealth v. Bass*, 292 Va. 19, 33 (2016) ("In a jury trial, the defendant preserves his objections to the sufficiency of the evidence in a motion to strike at the conclusion of the Commonwealth's case if he elects to not introduce

evidence of his own, or in a motion to strike at the conclusion of all the evidence or a motion to set aside the verdict if he does elect to introduce evidence of his own.").

Kirby also contends that "sustaining his conviction in light of the insufficiency of the evidence and the circumstances regarding the failure of the court to strike juror number [14] for cause[8] would constitute a 'manifest injustice' and therefore" asks that we "grant an exception to the contemporaneous objection requirement of Supreme Court Rule 5A:18."

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." "Indeed, '[i]n order to preserve an issue for appeal, 'an objection must be timely made . . . with specificity.'" *Brittle v. Commonwealth*, 54 Va. App. 505, 512 (2009) (alteration in original) (quoting *McDuffie v. Commonwealth*, 49 Va. App. 170, 177 (2006)). *See also Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) ("Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity."). "If a party fails to timely and specifically object, he waives his argument on appeal." *Brittle*, 54 Va. App. at 512.

But "Rule 5A:18 permits us to overlook the appellant's failure to preserve the issue and consider the merits of his argument for the first time on appeal if the ends of justice so demand." *Id.* "Nonetheless, our Rule 5A:18 jurisprudence confirms that '[t]he "ends of justice" exception . . . is "narrow and is to be used sparingly."'" *Id.* (alterations in original) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). "The language used by our Supreme Court indicates that there are two distinct requirements that [an appellant] must meet before we can

---

[8] We do not consider Kirby's argument regarding his motion to strike Juror 14 for cause for the reasons stated *supra*.

apply the ends of justice exception: (1) that the trial court erred, and (2) that a grave or manifest injustice will occur or the appellant will be denied essential rights." *Id.* at 513.

Thus, for us to apply the ends of justice exception, an appellant must do more than merely show that the trial court erred, for "if every trial court error also constitute[d] a grave or manifest injustice or denial of essential rights, then the rule requiring contemporaneous objection or a motion to strike is swallowed by this exception." *Id.* Instead, an appellant must "affirmatively show . . . that the error [was] clear, substantial and material." *Id.* at 514 (alterations in original) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 219 (2004) (en banc)). Consequently, "when an appellant raises a sufficiency of the evidence argument for the first time on appeal, the standard is higher than whether the evidence was insufficient." *Id.* "We cannot consider the merits of every improperly preserved sufficiency of the evidence appeal unless there is some reason beyond mere insufficiency that invokes the ends of justice exception. Any other rule would obliterate our rules requiring a motion to strike." *Id.*

Here, Kirby does not provide a reason beyond insufficiency for the application of the ends of justice exception. Thus, Kirby's sufficiency argument fails to raise an issue that would enable application of the exception. Accordingly, the ends of justice exception does not apply and we do not consider the merits of Kirby's sufficiency challenge.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed*.